[Crim. No. 12568. In Bank. Jan. 30, 1970.]

In re JOHNIE LEE MOSLEY on Habeas Corpus.

## COUNSEL

Johnie Lee Mosley, in pro. per., and Martin Wolman, under appointment by the Supreme Court, for Petitioner.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Thomas S. Kerrigan, Deputy Attorney General, for Respondent.

## SUMMARY

**SULLIVAN, J.**—Johnie Lee Mosley is presently confined in the California Men's Colony at Los Padres pursuant to a judgment convicting him of assault by means of force likely to produce great bodily injury. (Pen. Code, § 245.) He seeks a writ of habeas corpus on the ground that his conviction was obtained in violation of his Sixth and Fourteenth Amendment rights to have the effective assistance of counsel, to plead not guilty, and to have a trial wherein he can confront and cross-examine the witnesses against him. We have issued an order to show cause and have appointed counsel to represent petitioner in this proceeding.

At the preliminary examination conducted on February 3, 1966, petitioner's 16-year-old son, Curtis, testified that on the evening of January 6, 1966, he was at home with his mother and several young children when his father, petitioner, entered and commenced to argue with his mother; that when he, Curtis, went into the kitchen where the argument was taking place, his mother had gone into a bedroom and petitioner "dared" her to come out into the kitchen; that when the mother entered the kitchen

he, Curtis, saw that petitioner was holding an opened knife in his pocket; that after some further argument petitioner lunged at the mother with the knife and he, Curtis, jumped in the way; and that he struggled with petitioner for the knife and sustained cuts on his head and ear.[1] Curtis exhibited scars on his head and ear which he alleged had resulted from the knife wounds.

Petitioner's appointed counsel, a member of the public defender's office, cross-examined Curtis at some length regarding the incident. Curtis denied that he disliked his father but stated that his father should be punished so that he would not repeat his conduct. Curtis also denied that he had held a gun during the incident, but he admitted that his mother, after the knife wounds had been inflicted, seized a ".45 caliber bee-bee gun" which he owned and sought to "scare [petitioner] to get the knife."[2]

Petitioner did not testify at the preliminary examination, and no witnesses were called in his behalf.[3] He was held to answer and on February 16 an information was filed charging him with assault with a deadly weapon. (Pen. Code, § 245.)[4] At his arraignment on February 17, petitioner entered a plea of not guilty.

The case was called for trial on March 30, 1966. At that time petitioner appeared with his appointed counsel, a deputy public defender different from the one who had represented him at the preliminary examination. The following then took place:

"[DEFENSE COUNSEL]: . . . The defendant desires to waive his right to a jury trial, your Honor, and submit the matter on the transcript of the preliminary hearing. There will be no further testimony. Is that correct, Mr. Mosley?

"THE DEFENDANT: Correct.

"[THE PROSECUTOR]: Mr. Mosley, you understand you have a right to a jury trial if you desire?

---

[1]The knife was introduced into evidence as a prosecution exhibit.

[2]The gun was introduced into evidence as a defense exhibit.

[3]In his petition Mosley alleges that he asked his attorney to allow him to testify and to call witnesses in his behalf, but that his attorney refused to do so.

[4]Section 245 at the time here relevant provided: "Every person who commits an assault upon the person of another with a deadly weapon or instrument or by any means of force likely to produce great bodily injury is punishable by imprisonment in the state prison not exceeding ten years, or in a county jail not exceeding one year, or by fine not exceeding five thousand dollars ($5,000), or by both such fine and imprisonment."

The statute has since been amended to provide for increased penalties when the assault is perpetrated against a policeman or fireman engaged in the performance of his duties.

"THE DEFENDANT: That's correct.

"[THE PROSECUTOR]: Answer out loud.

"THE DEFENDANT: Correct.

"[THE PROSECUTOR]: So you do at this time give up your right to a jury trial and ask for a court trial?

"THE DEFENDANT: Yes."

Thereupon defense counsel and the prosecutor joined in the waiver of jury trial and stipulated that the court should consider the transcript of the preliminary examination and give it the same force and effect as though the witness had been called and sworn at trial and had testified as reflected therein. Then the prosecution and defense rested their respective cases and submitted the matter. The court, having read the transcript in anticipation of such submission, found petitioner guilty of assault by means of force likely to produce great bodily injury.[5] A probation report was ordered, and petitioner was referred to the Department of Corrections for diagnostic examination (Pen. Code, § 1203.03). On August 3, 1966, the court, after considering the probation and diagnostic reports, denied probation and sentenced petitioner to imprisonment for the term prescribed by law with a recommendation of minimum time in custody.

There was no appeal from the judgment.

In his petition for writ of habeas corpus petitioner complains that he was deprived of his right to plead not guilty and have a jury trial wherein he could confront the witnesses against him. He also contends that he was denied the effective assistance of counsel in that his counsel failed to advise him that he had such rights and to prepare an adequate defense in his behalf. We may fairly imply from the petition the additional allegation

---

[5]As indicated above, the information charged petitioner with assault with a deadly weapon in violation of section 245 of the Penal Code. The court found him guilty of assault by means of force likely to produce great bodily injury in·violation of the same section. The judgment, after setting forth this finding, states that the offense of which petitioner was found guilty is "a lesser offense than that charged in the information but necessarily included therein." This is not so. Section 245 (see fn. 4, *ante*) defines only one offense, to wit, "assault upon the person of another with a deadly weapon or instrument or by any means of force likely to produce great bodily injury. . . ." The offense of assault by means of force likely to produce great bodily injury is not an offense separate from—and certainly not an offense lesser than and included within—the offense of assault with a deadly weapon. This is not to say, of course, that a judgment may not properly specify which of the two categories of conduct prohibited by section 245 (i.e., assault (1) with a deadly weapon or instrument, or (2) by means of force likely to produce great bodily injury) was involved in the particular case. We believe that such a finding should be made for the benefit of probation and correction officials who may, as the instant case tends to indicate (see, *infra*), attach significance thereto.

that petitioner was not informed by his counsel that submission of the case on the transcript of the preliminary examination was tantamount in the circumstances to a plea of guilty.

The return to the order to show cause sets forth in summary the facts which we have recited and concludes that petitioner has not been deprived of any of his legal and constitutional rights.

Appended to the return is the affidavit of the deputy public defender who represented petitioner on March 30, 1966, when the case was submitted on the transcript of the preliminary examination, and on August 3, 1966, when he was sentenced. That affidavit, after stating in substance that the affiant had been a deputy public defender for some eight years preceding the period in question and that he represented petitioner in the subject proceedings, goes on as follows: "That in connection with his representation of petitioner, he [affiant] had conversations with both petitioner and his wife prior to and after the trial though he does not recall the precise content of all of these conversations. [Par.] That it is his recollection that there were no witnesses to dispute the testimony of the victim, petitioner's son, that he was cut with a knife by the petitioner. [Par.] That he has reviewed the minutes of the court records in this matter which indicate that defendant waived his right to a jury trial and submitted the matter on the transcript of the preliminary hearing on March 30, 1966. [Par.] That it was his practice to advise defendants of their right to a jury trial or a court trial and to explain the significance of a submission on the transcript of a preliminary hearing. That it was also his practice to inform defendants that a guilty finding was likely when a case is submitted on the transcript of the preliminary hearing when such transcript contained sufficient evidence to support the charge. That he feels certain that this defendant was so informed. [Par.] That he was aware that when a case was submitted on the transcript of the preliminary hearing and mitigating circumstances surrounding the assault exist, there was a good possibility that the charge might be reduced to assault by means of force likely to produce great bodily injury. That he was aware that this reduction could be of great significance because it had been his experience that the Probation Department was very reluctant to recommend probation on a conviction for assault with a deadly weapon and that seeking probation was the petitioner's chief concern. [Par.] That he was aware that the petitioner had a drinking problem but did not feel that this fact would result in an acquittal for petitioner in view of the circumstances of this case and the nature of the charge. That he felt that it would be to petitioner's interest to try for a reduction of the charge and apply for probation and that the petitioner was in accord with this plan."

In conclusion the affidavit alleges that affiant at the time of petitioner's

case had made appearances in the subject trial court for more than four years; that affiant employed no duress on petitioner, made no promises to him, and felt that he was working in petitioner's best interest at all times; and that affiant was not aware that petitioner was dissatisfied with the representation afforded him until he was so informed by the Attorney General's office shortly before the filing of the order to show cause in March of 1969.

The Sixth Amendment to the United States Constitution provides: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the assistance of counsel for his defense."

■■ It is clear that the guarantee of confrontation here set forth is made applicable to the states by the Fourteenth Amendment. (*Brookhart* v. *Janis* (1966) 384 U.S. 1, 3-4 [16 L.Ed.2d 314, 316-317, 86 S.Ct. 1245]; *Pointer* v. *Texas* (1965) 380 U.S. 400, 403-406 [13 L.Ed.2d 923, 925-927, 85 S.Ct. 1065]; *Douglas* v. *Alabama* (1965) 380 U.S. 415, 418 [13 L.Ed. 2d 934, 937, 85 S.Ct. 1074]; *People* v. *Foster* (1967) 67 Cal.2d 604, 606 [63 Cal.Rptr. 288, 432 P.2d 976].) Moreover, the same right is guaranteed by statute in California. (Pen. Code, § 686.) The right may be waived, however, and in numerous cases it has been held that no infringement thereof results when defense counsel, in defendant's presence and without objection by him, stipulates at trial that testimony given at the preliminary examination, as reflected in the transcript thereof, shall be given the same force and effect as though the witnesses had so testified at trial. (*Butler* v. *Wilson* (9th Cir. 1966) 365 F.2d 308, 310; *Wilson* v. *Gray* (9th Cir. 1965) 345 F.2d 282, 286-290, cert. den. 382 U.S. 919 [15 L.Ed.2d 234, 86 S.Ct. 288]; see *Symons* v. *Klinger* (9th Cir. 1967) 372 F.2d 47, 49-50, cert. den. 386 U.S. 1040 [18 L.Ed.2d 609, 87 S.Ct. 1499]; *People* v. *Foster, supra,* 67 Cal.2d 604, 606-607; *People* v. *Dessauer* (1952) 38 Cal.2d 547, 552 [241 P.2d 238]; *People* v. *Wallin* (1950) 34 Cal.2d 777, 781-782 [215 P.2d 1]; cf. *Pointer* v. *Texas, supra,* 380 U.S. 400, 407 [13 L.Ed.2d 923, 928, 85 S.Ct. 1065].)[6]

---

· [6]In some of the cited cases it was noted that counsel had cross-examined the witnesses at the preliminary examination. Although in the instant case cross-examination of the witness Curtis Mosley was also undertaken at the preliminary examination, we do not consider that such cross-examination is essential to a valid waiver of the right of confrontation in all cases involving stipulated use of a preliminary examination transcript at trial. It is the *opportunity for,* rather than the fact of, cross-examination which is crucial. (See *Pointer* v. *Texas, supra,* 380 U.S. 400, 407.) Of course in

It is defendant's contention, however, that in the circumstances obtaining the submission of the case on the transcript of the preliminary examination was tantamount to a guilty plea entered without effective consent on his part.

In *Brookhart* v. *Janis, supra,* 384 U.S. 1, an Ohio defendant charged with forgery and other crimes entered a plea of not guilty and was provided with appointed counsel. On the date set for trial the defendant appeared with his counsel and personally waived a jury trial. His counsel then stated to the court that the matter was to be submitted on a "prima facie case," a procedure employed in Ohio whereby the defendant apparently agrees to be found guilty if the state can produce legally sufficient evidence of guilt, the defendant further agreeing that he will neither present his own witnesses nor cross-examine those of the state. As the trial court was ascertaining that defense counsel understood the limited nature of the "prima facie case" proceeding, the defendant interjected: "I would like to point out in no way am I pleading guilty to this charge." The trial court thereupon stated that the defendant should make up his mind "whether you require a prima facie case or a complete trial of it." The defendant did not reply, but his counsel stated: "Prima facie, Your Honor, is all we are interested in." Apparently, the trial court then proceeded to hear the state's witnesses and found the defendant guilty. (384 U.S. at pp. 5-6 [16 L.Ed.2d at pp. 317-318].) The Supreme Court of Ohio denied the defendant's petition for habeas corpus, and the United States Supreme Court granted certiorari.

The high court, characterizing the "prima facie case" procedure as "the practical equivalent of a plea of guilty," stated that the question at bench was "whether counsel has power to enter a plea which is inconsistent with his client's expressed desire and thereby waive his client's constitutional right to plead not guilty and have a trial in which he can confront and cross-examine the witnesses against him." (384 U.S. at p. 7 [16 L.Ed.2d at p. 319].) The court's answer was in the negative: "It is true, as stated in *Henry* v. *Mississippi,* 379 U.S. 443, 451 [13 L.Ed.2d 408, 414, 85 S.Ct. 564], that counsel may, under some conditions, where the circumstances are not 'exceptional, preclude the accused from asserting constitutional claims. . . .' Nothing in *Henry,* however, can possibly support a contention that counsel for defendant can override his client's desire expressed in open court to plead not guilty and enter in the name of his client another plea—whatever the label—which would shut off the defendant's constitutional right to confront and cross-examine the witnesses against him which

some cases the failure of counsel to avail himself of the opportunity may result in less than adequate representation or may amount to the equivalent of a guilty plea. It is to these considerations that we now turn.

he would have an opportunity to do under a plea of not guilty. Since we hold that petitioner neither personally waived his right nor acquiesced in his lawyer's attempted waiver, the judgment of the Supreme Court of Ohio must be and is reversed. . . ." (Fn. omitted.) (384 U.S. at pp. 7-8 [16 L.Ed.2d at pp. 318-319].)

In *People* v. *Wheeler* (1968) 260 Cal.App.2d 522 [67 Cal.Rptr. 246], the *Brookhart* case was applied to a situation involving submission on the transcript of the preliminary examination. There police officers testified at the preliminary examination regarding a confrontation between the defendant and an officer, both armed with shotguns, which resulted in wounds to both—the evidence raising some doubt as to whether the defendant fired his gun at all and whether the wounds to the officer were caused by ricochet from the shot which he himself fired. The opinion does not indicate whether cross-examination occurred at the preliminary examination. In any event the defendant was bound over for trial on a charge of assault with intent to commit murder.

At a hearing prior to trial the defendant personally waived a jury and his counsel proceeded to enter into a stipulation with the prosecutor that the case be submitted on the transcript of the preliminary examination. The defendant, although present, neither personally participated in the stipulation nor affirmatively assented thereto. Ten days later the case came on for trial. Both sides rested without further testimony; the court indicated that it had considered the transcript and exhibits and proceeded to find the defendant guilty of assault with a deadly weapon, a lesser offense necessarily included within the charged offense. At this point the defendant entered a vehement protest to the effect that he had been found guilty without being afforded an opportunity to tell his side of the story. The court explained that this was the necessary result of the stipulation entered into by counsel, and when the defendant refused to be consoled by this information and continued to express his dismay, the court ordered that he be removed from the courtroom.

The Court of Appeal held that the case was "indistinguishable" from *Brookhart* (260 Cal.App.2d at p. 526). Although, the court noted, the primary focus of the Supreme Court in *Brookhart* was the right of the accused to confront and cross-examine witnesses against him, whereas in the case at bench that focus was the right of the accused to testify in his own behalf, it was recognized that the same basic guarantee was at issue in both cases—to wit, the fundamental constitutional right of an accused person to plead not guilty and offer a defense to the charges brought against

him.[7] That right, the court suggested, might well have been improperly abridged under the circumstances obtaining,[8] but rather than ordering a hearing on that matter the court reversed the judgment in its entirety in view of the general ineffectiveness manifested by counsel.

■ We consider that the thrust of *Brookhart,* viewed in the context of its application in *Wheeler,* is this: It is the fundamental constitutional right of a person accused of crime to plead not guilty to the charge and have a trial by a jury of his peers wherein he can defend himself by confronting and cross-examining witnesses against him and by presenting witnesses in his own behalf. ■ That right may be waived *wholly or in part by the accused*—either by a personal assertion of waiver or by acquiescence in a waiver undertaken by his counsel; it may also in some circumstances be waived *in part by counsel without the consent of the accused,* as when counsel makes a "tactical decision" not to cross-examine a particular witness or not to place the accused on the stand. ■ However, the fundamental right may not be waived in its entirety by counsel—only the accused himself can do this, either by express waiver or by acquiescence in a waiver undertaken on his behalf by counsel. ■ Accordingly, the right cannot be waived *in its entirety* by counsel over the objection of the accused by entering into stipulations which, in the circumstances of the particular case, are tantamount to a plea of guilty.

■ Applying these principles to the case before us we conclude without hesitation that the stipulation entered into by counsel to submit the case on the transcript of the preliminary examination was, in the circumstances of this particular case,[9] tantamount to a plea of guilty and was a

[7]The court set out in a footnote the following language from *In re Oliver* (1948) 333 U.S. 257, 273 [92 L.Ed. 682, 694, 68 S.Ct. 499]: " 'A person's right to reasonable notice of a charge against him, and an opportunity to be heard in his defense—a right to his day in court—are basic to our system of jurisprudence; and these rights include, as a minimum, a right to examine the witnesses against him, *to offer testimony,* and to be represented by counsel.' " (260 Cal.App.2d at p. 527, fn. 6.)

[8]The court noted that the defendant's reaction to the finding of guilt might have been an "act" seeking to salvage an unsuccessful gamble. It is also suggested that the right in question would not have been abridged if it appeared that counsel had made "a tactical decision not to have his client testify, . . ." (260 Cal.App.2d at p. 528.) As we point out, *infra,* we do not think that *Brookhart* permits this language to bear the implication that counsel may against the express wishes of his client make "a tactical decision not to have his client testify" when the circumstances are such that that decision is tantamount to a plea of guilty.

[9]Reference to the facts of the particular case is necessary. We can conceive of many cases wherein submission on the transcript of the preliminary examination would in no way have the practical effect of a guilty plea. Purely by way of example and without intending any limitation, we include among these the following: (1) a case wherein the preliminary examination involved substantial cross-examination of prosecution witnesses and the presentation of defense evidence, and (2) a case wherein

purported waiver of the whole panoply of rights to which we have adverted. In addition to counsel's own statement in his affidavit as to the contemplated effect of the stipulation in petitioner's case, it appears that the cross-examination of Curtis Mosley which occurred at the preliminary examination raised no significant doubt as to the truth of the testimony given by him on direct examination—which testimony was clearly sufficient in law to support a conviction of the charged crime.

■ We thus turn to the question whether petitioner, through personal affirmation or acquiescence, waived the comprehensive right to plead not guilty, and have a trial by a jury of his peers wherein he could defend himself by confronting and cross-examining witnesses against him and by presenting witnesses in his own behalf. That he did make such a waiver is, we think, clear. The transcript of proceedings on the date of trial (March 30, 1966) reflects petitioner's personal and express affirmation (1) that he desired to submit the matter on the transcript of the preliminary examination without further testimony. Certainly that record, which we have set forth in relevant part above, manifests no objection on petitioner's part either at the time of the stipulation (cf. *Brookhart*) or at the time of the court's finding of guilt (cf. *Wheeler*). Thus, a waiver of the type contemplated in *Brookhart* appears on the face of the record.

Petitioner further contends, however, that the waiver reflected on the record was not knowing and intelligent because he was not informed, by his counsel or otherwise, that his consent to the submission procedure was tantamount in the circumstances to a plea of guilty. As we have seen, petitioner's allegation to this effect is contradicted by the affidavit of his defense counsel filed with the return to the order to show cause—such affidavit alleging in essence that counsel explained to petitioner the probable effects of submitting the case on the preliminary transcript, including the "good possibility" that this procedure might result in a reduction of the charge to a crime for which probation might be granted, and that petitioner "was in accord with this plan." Thus, a factual issue is joined as to whether counsel did in fact inform petitioner that the submission procedure was tantamount to a plea of guilty in the circumstances. We do not believe, however, that a resolution of this issue is necessary to our disposition of the instant petition, for petitioner's conduct at the trial, considered together with his knowledge of the evidence which had been produced against him at the preliminary examination, leaves little room for speculation that he was not fully aware of the import of submitting the case without further testimony on the transcript of the preliminary examination. To argue that

---

the facts revealed at the preliminary examination are essentially undisputed but counsel seeks to make an argument to the court as to the legal significance to be accorded them.

he harbored the hope of *acquittal* in such circumstances is to argue the incredible. (Cf. *In re Tahl, ante,* p. 122, at p. 135, fn. 12 [81 Cal.Rptr. 577, 460 P.2d 449].)

For the above reasons we have concluded that the proceedings leading to petitioner's conviction did not abridge his basic constitutional right to plead not guilty and to mount a defense to the charges against him as that right is enunciated in *Brookhart* v. *Janis, supra,* 384 U.S. 1, and applied in *People* v. *Wheeler, supra,* 260 Cal.App.2d 522.

■ However, our characterization of the stipulation in question as the practical equivalent of a plea of guilty requires that we also consider whether the relief sought by petitioner must be granted because of non-compliance with the provisions of California law governing the entry of such a plea. (See *People* v. *Rogers* (1961) 56 Cal.2d 301, 305-307 [14 Cal.Rptr. 660, 363 P.2d 892]; cf. *People* v. *Reeves* (1966) 64 Cal.2d 766, 772 [51 Cal.Rptr. 691, 415 P.2d 35].) Section 1018 of the Penal Code provides in relevant part that "every plea must be put in by the defendant himself in open court." In *In re Martinez* (1959) 52 Cal.2d 808, at page 815 [245 P.2d 449], we observed that "The purpose of the requirement that a plea be entered by defendant personally is to ensure that the plea is his own. If it is, the purpose of that requirement is accomplished, . . ." ■ ■ Moreover, when a plea is made with counsel and it appears or can be inferred from the record that prior to making the plea defendant has consulted with counsel it is presumed, in the absence of evidence to the contrary, that counsel has informed defendant of the various rights which are waived by a plea of guilty. (See *In re Tahl, supra, ante,* p. 122, at pp. 127-129.)[10] ■ The record in the instant case clearly indicates that counsel had conferred with petitioner prior to the stipulation in question; we can construe petitioner's ready assent to the procedure, including his specific waivers of jury trial and the right to produce further evidence, in no other way. These same affirmations also demonstrate that the "plea" was "his own" as required by *In re Martinez, supra,* 52 Cal.2d 808, 815. Accordingly, we hold that petitioner is not

---

[10]As we recently held in *Tahl,* the requirement of *Boykin* v. *Alabama* (1969) 395 U.S. 238 [23 L.Ed.2d 274, 89 S.Ct. 1709], that the defendant's waiver of rights involved in a guilty plea affirmatively appear on the record is to be given prospective application. Thus, petitioner herein is precluded from reliance upon *Boykin.* We think it clear, however, that *Boykin* and *Brookhart,* taken together, require that in the future the use of stipulations which, in the circumstances of the particular case, are *in fact* tantamount to a plea of guilty (see fn. 9, *ante,* and accompanying text) must be accompanied by an affirmative showing on the record that the defendant waives his right to freedom from compulsory self-incrimination, his right to trial by jury, and his right to confront his accusers. (See *Boykin* v. *Alabama, supra,* 395 U.S. 238, 243-244 [23 L.Ed.2d 274, 279-280, 89 S.Ct. 1709].)

entitled to relief on the ground of noncompliance with provisions of California law governing the entry of a plea of guilty.

■ Finally, we conclude that petitioner was not denied the effective representation of counsel. Clearly the tactic pursued by counsel, with a view to obtaining probation, was a reasonable one in view of the evidence against petitioner. The failure of that tactic to achieve its precise aim does not detract from its reasonableness in the circumstances, especially in view of the fact that a recommendation of minimum time in custody was obtained. Certainly it cannot be maintained that the proceedings, through counsel's conduct, were reduced to a farce or a sham. (*People* v. *Ibarra* (1963) 60 Cal.2d 460, 464 [34 Cal.Rptr. 863, 386 P.2d 487].)

■ One point bears final emphasis. We do not hold in this case that a defendant's submission of his case to the trial court on the transcript of the preliminary examination is ipso facto tantamount to a plea of guilty. As we have pointed out (fn. 9, *ante,* and accompanying text), there are many instances in which such submission would *not* have the same practical effect as a guilty plea. Our decision is simply that where, as in the instant case, the defendant submits his case on a transcript of the preliminary hearing which under the circumstances can offer him no hope of acquittal, such submission is tantamount to a plea of guilty and must be accompanied by the constitutional and statutory safeguards which such a plea entails.

Other contentions raised in the petition are clearly without merit and require no discussion.

The petition for habeas corpus is denied, and the order to show cause is discharged.

Traynor, C. J., Tobriner, J., Mosk, J., and Burke, J., concurred.

**McCOMB, J.**—I concur in the order denying the petition for habeas corpus and discharging the order to show cause.

**PETERS, J.**—I dissent.

The majority do not contest that *Brookhart* v. *Janis* (1966) 384 U.S. 1, 4-5, 7-8 [16 L.Ed.2d 314, 317-318, 319-320, 86 S.Ct. 1245], stands for the proposition that a defendant cannot be held to a guilty plea unless he has either entered it personally or knowingly and understandingly acquiesced in his attorney's entry of such a plea. The majority also do not dispute that submission of the case on the preliminary hearing transcript was tantamount to a guilty plea in this case. However, the majority maintain that a resolution of the "factual issue . . . as to whether counsel did

in fact inform petitioner that the submission procedure was tantamount to a plea of guilty in the circumstances" is not necessary to our disposition of the instant petition. (*Ante,* pp. 925-926.) The majority summarily dismiss as "incredible" petitioner's allegation that he did not know that his consent to the submission procedure was tantamount in the circumstances to a plea of guilty.

I cannot agree with the majority's disposition of petitioner's above allegation. In my opinion, the facts raise a substantial question as to the truth of petitioner's allegation.

Petitioner claims that his defense counsel did not explain to him the significance of submitting the case on the basis of the preliminary transcript.[1] Petitioner entered a plea of not guilty at his arraignment (*after* the preliminary hearing), and he never changed his plea from not guilty to guilty. The record shows that the trial judge did not determine whether petitioner understood that the submission on the basis of the preliminary transcript amounted to a plea of guilty.

In other words, the trial judge did not ascertain that the defendant understood the nature of his plea. (Cf. *People* v. *Reeves,* 64 Cal.2d 766, 772 [51 Cal.Rptr. 691, 415 P.2d 35].) The fact that petitioner expressly agreed to his attorney's statement that the case was to be "submit[ted] . . . on the transcript of the preliminary hearing. . . . [with] no further testimony" does not establish that petitioner understood the consequences of his consent. It certainly cannot be presumed that a lay defendant understands the consequences of a submission of a case on the transcript of the preliminary hearing. Indeed, I would presume, if anything, that the defendant —unless informed otherwise—does *not* understand the consequences of his conduct where, as here, he explicitly pleads "not guilty" and then without expressly changing his plea to "guilty" agrees to a procedure—the effects of which are not self-evident to a layman—which is tantamount in the particular circumstances to a plea of guilty.

The fact that petitioner did not speak out at trial and reaffirm his not guilty plea is not determinative. The defendant in *Brookhart* spoke out to indicate he did not intend to plead guilty; however, he remained silent

---

[1] Petitioner asserts that he is innocent; he has presented in his petition a detailed account of evidence that would prove his claim of innocence. This evidence was not presented at the preliminary hearing. In the present posture of the case, we have no basis for rejecting petitioner's claim of evidence. The existence of such evidence would lend support to his claim that he did not realize he was pleading guilty. As a tactical matter, it is reasonable for a defendant to forgo the opportunity to present defense evidence and submit the case on the transcript of the preliminary hearing when he has reason to believe that the chances of acquittal are greater by submitting the case on the transcript than by presenting the defense evidence and allowing the prosecutor to produce further evidence in support of his case.

when, despite his outburst, his attorney reaffirmed his willingness to submit the matter at trial on the basis of a "prima facie case." Nonetheless, despite the fact that the defendant there had at least some suspicion that the "prima facie case" procedure was at odds with his not guilty plea and yet silently acquiesced to that procedure, the Supreme Court determined that he had not "intelligently and knowingly" agreed to the procedure or its consequences. (Compare 384 U.S. at pp. 9-10 [16 L.Ed.2d at p. 320] (separate opinion of Harlan, J.), with *id.,* at p. 7 [16 L.Ed.2d at p. 318].) In the present case, there is no such indication that petitioner even suspected the procedure employed at trial was at odds with his not guilty plea. The fact that he did not spontaneously reaffirm his not guilty plea is thus entirely consistent with the supposition that he did not realize that the integrity of that plea was jeopardized by the submission procedure.

Nor is it determinative that petitioner knew of the evidence produced against him at the preliminary examination. Petitioner—a layman—cannot be presumed to know either that the testimony was legally sufficent to support, or that it compelled, a conviction.

Thus, contrary to the majority opinion (*ante,* p. 925), there is nothing either in "petitioner's conduct at the trial" or in "his knowledge of the evidence which had been produced against him at the preliminary examination" that renders "incredible" his claim that he was unaware that his consent to the submission procedure was tantamount to a plea of guilty. (Cf. *Chavez* v. *Wilson* (9th Cir. 1969) 417 F.2d 584, 585-586.)[2] To hold otherwise is to presume that a lay defendant has the knowledge of a trained criminal attorney.

I would order a reference hearing to determine whether petitioner's consent to the submission procedure in this case was knowing and intelligent.[3]

---

[2]It is true that petitioner's defense counsel filed an affidavit stating that "it was . . . his practice" to inform defendants of the consequences of submitting a case on the transcript of the preliminary hearing and that "he feels certain" that petitioner was so informed. (It should be noted that the defense counsel did not state that he actually recalled specifically informing petitioner.) In any event, this affidavit by petitioner's defense counsel—as recognized by the majority—merely raises the factual issue and furnishes no basis for the conclusion that petitioner's allegations are "incredible."

[3]I would also hold that *Boykin* v. *Alabama* (1969) 395 U.S. 238 [23 L.Ed.2d 274, 89 S.Ct. 1709], requires that petitioner be afforded a hearing to determine whether he knowingly and intelligently waived the constitutional rights to confrontation and against self-incrimination involved in a guilty plea. (See my dissent in *In re Tahl,* ante, pp. 122, 138 [81 Cal.Rptr. 577, 460 P.2d 449].) However, a majority of this court has refused to give retroactive effect to this substantive requirement of *Boykin.* (*Id.,* at pp. 133-135.)