[Crim. No. 5785. Third Dist. Feb. 16, 1971.]

THE PEOPLE, Plaintiff and Respondent, v.
GREGORY L. MORELAND, Defendant and Appellant.

## Counsel

Burl W. Waits, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Daniel J. Kremer and Robert D. Marshall, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

JANES, J.—Defendant appeals from a judgment based upon the trial court's finding that he was guilty of escape (without force or violence) in violation of section 4530, subdivision (b), of the Penal Code.[1] He was sentenced to state prison for a term concurrent with his existing term.

No attack is made on the sufficiency of the evidence supporting the charge of escape. Defendant's contentions are that (1) the trial court erred in denying a motion made under section 995 to set aside the information upon the ground that defendant was denied his right, under section 851.5,[2] to the use of a telephone; and that (2) the manner of submission of his case to the court for decision on the transcript of the preliminary examination as supplemented by testimony taken on the motion to set aside the information was insufficient to protect his constitutional rights guaranteed by *Boykin* v. *Alabama* (1969) 395 U.S. 238 [23 L.Ed.2d 274, 89 S.Ct. 1709]; *In re Tahl* (1969) 1 Cal.3d 122 [81 Cal.Rptr. 577, 460 P.2d 449], and *In re Mosley* (1960) 1 Cal.3d 913 [83 Cal.Rptr. 809, 464 P.2d 473].

---

[1] All section references are to the Penal Code.

[2] Section 851.5 provides in part as follows: "(a) Any person arrested has, immediately after he is booked, and, except where physically impossible, no later than three hours after his arrest, the right to make, at his own expense, in the presence of a public officer or employee, at least two telephone calls from the police station or other place at which he is booked, one completed to the person called, who may be his attorney, employer, or a relative, the other completed to a bail bondsman. . . ."

### Factual Background

On August 27, 1969, it was discovered in a routine bed check that defendant was missing without permission from the Conservation Camp at Plum Creek, Tehama County, where he was an inmate in the custody of the Department of Corrections. On January 20, 1970, he was arrested for escape by a correctional officer of the Department of Corrections, in La Habra, Orange County. He was taken to the La Habra city jail for approximately ten minutes, from there to the California Correctional Institution for Men at Chino for three days, and then via Vacaville to the Tehama County jail.

Defendant was booked in Tehama County jail on Friday January 23, at approximately 2 p.m. He did not make a telephone call from the time of his arrest in La Habra on January 20 until Monday, January 26, the date of his arraignment in justice court.

At the preliminary examination on January 30, defendant was represented by appointed counsel. Upon his arraignment in superior court on February 16, a motion to set aside the information based solely on the denial of defendant's right to make a telephone call during the period January 23-26 was denied. Defendant then entered a plea of not guilty and waived trial by jury. Thereupon, defense counsel stated to the court that he had explained to defendant "the nature of the trial" he was entitled to, and that defendant wished to have the case submitted for decision on the preliminary transcript. After a colloquy between the court and defendant (which we will later discuss in detail), the court fixed February 19 (three days later) as the trial date. On February 19, the case was heard on the preliminary transcript, supplemented by the testimony previously taken on hearing of the section 995 motion, and the court found defendant guilty as charged.

### I

The contention that defendant's motion to set aside the information should have been granted because he was denied the right to his telephone privilege under section 851.5 is without merit. ■ Defendant, being in the legal custody of the Department of Corrections when apprehended, acquired no rights under section 851.5 from the time of his escape until his arraignment before the magistrate on January 26. (See *People* v. *Robinson* (1968) 266 Cal.App.2d 261 [72 Cal.Rptr. 33];[3] *People* v. *Garmon* (1960) 177 Cal.App.2d 301, 302-303 [2 Cal.Rptr. 60].)

---

[3]In *Robinson,* where the facts of the escape were essentially the same as those at bench, the court stated: "As the record here indicates that at all times defendant was

■ Assuming *arguendo,* that defendant did acquire the status of an arrestee upon his booking at the Tehama County jail, the telephone call issue was fully explored at the preliminary examination. The evidence there taken was in substantial conflict and did not compel the dismissal of the complaint.[4]

The final witness at the preliminary examination was a correctional officer from the Plum Creek Conservation Camp. Through his brief testimony and the official records establishing defendant's commitment as an inmate, evidence was produced which established beyond question that defendant had escaped as charged from the lawful custody of the Department of Corrections. In this state of the evidence, there can be no question of the propriety of the order holding defendant to answer before the superior court. (*Rideout* v. *Superior Court* (1967) 67 Cal.2d 471, 474 [62 Cal.Rptr. 581, 432 P.2d 197].)

■ In the exercise of his traditional authority as arbiter of conflicting facts and inferences in the proceeding before him, it was the prerogative of the magistrate also to weigh the defendant's rights under section 851.5 in light of the initial time condition imposed by defendant himself and the exigent conditions present in and about the county seat which pressed all available sheriff's personnel into emergency search and rescue service in aid of those endangered by, or victims of the flood. (See § 851.5, fn. 2, *supra,* qualifying defendant's rights under the statute, when grant of the telephone privilege is "physically impossible.")

At hearing of the section 995 motion in superior court, extensive additional testimony was received. Just as all but a few pages of the preliminary transcript are taken up by the disputed issue under section 851.5, the entire testimony and argument before the superior court were devoted to the tele-

a prisoner and *in custodia legis,* he was not 'arrested' within the meaning of Penal Code sections 821, 825 and 851.5. [Citations.]" (*Id.,* pp. 265-266; see *People* v. *Curtis* (1969) 70 Cal.2d 347, fn. 1, at p. 351 [74 Cal.Rptr. 713, 450 P.2d 33].)

[4]Defendant testified, before the magistrate, that at the time of booking, he made a request at the "front desk" to make a telephone call to his attorney and his parents; that he repeated the request on Saturday and Sunday; and that he was not allowed to make the calls. The evidence produced by the People cast an entirely different light on defendant's claim. Admitting defendant's request at booking that he wished to make a telephone call, the undersheriff testified that defendant stated there "would be nobody at the place he wished to call until 6:00 o'clock." Defendant was then advised that due to personnel limitations, the felony tanks were secured for the night at 5 p.m.; that although there would be only one jailer on duty, the officers would try to extend defendant the privilege of a call if an extra deputy was in the area. It was further shown that during this period the Sacramento River was flooding in the area of Red Bluff and that all available deputies were assisting in evacuation and rescue missions.

phone call issue, to the exclusion of any consideration of the essential facts relating to the escape charge. The testimony in superior court served only to heighten the earlier conflict shown before the magistrate and to bring out additional evidence adverse to defendant's contention.

The 995 motion was then submitted "on the evidence" taken and that contained in the transcript of the preliminary examination, and the arguments of counsel were confined to a consideration of the effect of the claimed violation of section 851.5. The court alluded to defendant's status as a ward of the Department of Corrections, pointed out that counsel had made a protective record for review of the section 851.5 issue, and denied the motion to set aside the information.

The motion to set aside the information was properly denied. Although "the entire tenor of [section 851.5] is one of liberality to the accused" (*In re Newbern* (1961) 55 Cal.2d 500, 506 [11 Cal.Rptr. 547, 360 P.2d 43]), the statute on its face emphasizes that an accused is not guaranteed the *absolute* right to timely use of a telephone. Read in its entirety, the statute recognizes that particular circumstances may properly be weighed in balance with the rights guaranteed the accused.[5]

■ Finally, we point out that even if we were here faced with a demonstrated denial of defendant's rights under section 851.5, such deprivation would not justify reversal of the judgment, since there is absolutely no showing—except defendant's bare statement[6]—that the denial, if any, of defendant's rights to make an earlier telephone call "resulted in the denial of a fair trial or prevented the [defendant] from obtaining and presenting evidence of his innocence. . . ." (*In re Newbern, supra,* 55 Cal.2d at p. 507; see *People* v. *Reid* (1965) 233 Cal.App.2d 163, 181 [43 Cal.Rptr. 379].)

## II

A more serious question is presented by defendant's contention that submission of his case on the preliminary transcript was tantamount to a plea of guilty, and that in the absence of his personal waiver of the rights guaran-

---

[5]The Legislature has insured that the judgment to be exercised by police officers in such instances is not to be an unbridled discretion; the final paragraph of section 851.5 provides: "(b) Any public officer or employee who deprives an arrested person of the rights granted by this section is guilty of a misdemeanor."

[6]Although defendant claims that his case was prejudiced by the asserted denial of his right to call his attorney (because he had been unable to have his own attorney "to secure certain things and rights for [him] that [he, defendant] hadn't been able to"), when he was asked at the preliminary examination whether he wanted the matter continued until he could have his own counsel present, he answered, "No. I want the whole thing stricken, that is what I am talking about right now. I want the charges dropped."

teed to him by *Boykin* v. *Alabama, supra,* 395 U.S. 238, *In re Tahl, supra,* 1 Cal.3d 122 and *In re Mosley, supra,* 1 Cal.3d 913, the judgment must be reversed.

 Boykin, applicable to guilty pleas entered after June 2, 1969 (*In re Tahl, supra,* at p. 130), establishes that it can no longer be assumed from a *silent* record "that a guilty plea had been voluntarily made and that the constitutional rights necessarily forfeited by such plea had been freely and intelligently waived." (*Id.,* at p. 130.)

"Several federal constitutional rights are involved in a waiver that takes place when a plea of guilty is entered in a state criminal trial. First, is the privilege against compulsory self-incrimination. . . . [Citation.] Second, is the right to trial by jury. [Citation.] Third, is the right to confront one's accusers. [Citation.] We cannot presume a waiver of these three important federal rights from a silent record." (*Boykin* v. *Alabama, supra,* p. 243 [23 L.Ed.2d pp. 279-280].)

The language quoted from *Boykin* thus makes it clear that "a plea of guilty cannot stand unless the record in some manner indicates a free and intelligent waiver of the three enumerated rights necessarily abandoned by a guilty plea and an understanding of the nature and consequences of the plea" (*In re Tahl, supra,* p. 130); it calls for a demonstration by direct evidence on the face of the record, that "the accused was aware, or made aware, of his right to confrontation, to a jury trial, and against self-incrimination, as well as the nature of the charge and the consequences of his plea. Each must be enumerated and responses elicited from the person of the defendant." (*In re Tahl, supra,* p. 132.)

In *In re Mosley, supra,* 1 Cal.3d 913, after defendant-petitioner expressly waived his right to trial by jury, and after defense counsel and the prosecutor joined in the jury waiver, the two attorneys stipulated that the case be decided by the court upon the preliminary transcript, with the same force and effect as though the sole witness had been called, sworn and had testified before the court as his testimony appeared in the transcript of the preliminary examination. The court, having read the transcript, found Mosley guilty.

Mosley did not appeal from the pre-*Boykin* judgment, but in a habeas corpus proceeding filed after the *Boykin* decision our Supreme Court, after first concluding that the stipulation entered into by his counsel and the prosecutor to submit the case for decision by the court on the preliminary transcript was—in the circumstances of the *Mosley* case—tantamount to a plea of guilty, further concluded that the procedure employed was "a purported waiver of the whole panoply" of Mosley's rights, including not

only the right to trial by jury, but the rights to confront and cross-examine the witnesses against him and to present witnesses in his own behalf. (*In re Mosley, supra,* pp. 924-925.)

Although the Supreme Court sustained Mosley's contention that such submission was tantamount to a plea of guilty, the court held that under the applicable pre-*Boykin* standards he had validly and effectively waived those enumerated rights. However, the court pointedly cautioned that "in the future[7] the use of stipulations which, in the circumstances of the particular case, are *in fact* tantamount to a plea of guilty . . . must be accompanied by an affirmative showing on the record that the defendant waives his right to freedom from compulsory self-incrimination, his right to trial by jury, and his right to confront his accusers. (See *Boykin* v. *Alabama, supra,* 395 U.S. 238, 243-244 [23 L.Ed.2d 274, 279-280, 89 S.Ct. 1709].)" (Italics in original.) (*In re Mosley, supra,* fn. 10, p. 926.)

Recognizing that submission of defendant's case for decision on the preliminary transcript will not in every case, equate ipso facto with a plea of guilty, the opinion in *Mosley* concludes: "Our decision is simply that where, as in the instant case, the defendant submits his case on a transcript of the preliminary hearing which under the circumstances can offer him no hope of acquittal, such submission is tantamount to a plea of guilty and must be accompanied by the constitutional and statutory safeguards which such a plea entails." (*In re Mosley, supra,* p. 927.)

In the case before us, the defendant was fully advised—upon his initial superior court appearance on February 9, 1970, and again at hearing of the 995 motion on February 16—as to the nature of the charge against him and his right to defend against it; of his right to jury trial, the consequences of a guilty plea, and of his other enumerated constitutional rights.[8] Advised also of his right to counsel, the attorney who had represented defendant at his preliminary examination was—upon defendant's request—appointed

---

[7]On the matter of chronology, the decision in *Mosley* was filed January 30, 1970; the instant case was tried February 19, 1970.

[8]Defendant's arraignment was painstaking and detailed. The court summarized the information and read to the defendant the charging statute in its entirety, including the penalty for its violation. Defendant was informed of his right to a speedy trial, the use of the process of the court for the production of evidence, and that he was entitled to a reasonable time within which to enter a plea. The six possible forms of plea were explained to him, as well as the effect and consequences of them. The court cautioned that if defendant entered a plea of guilty (or of nolo contendere or of not guilty by reason of insanity) he in effect would be admitting the act charged, and that (except upon entry of a plea of not guilty by reason of insanity) he would in such event waive his right to a jury trial, his rights to be faced by and cross-examine the witnesses against him, and to produce evidence in his own behalf.

to represent defendant in superior court, and further arraignment was continued for one week, at defendant's request.

On February 16, when the case came on for further hearing, the section 995 motion was interposed, followed by the testimony and argument we have related bearing on the section 851.5 issue. At the conclusion of the argument, the court denied the 995 motion, pointing out that defendant had made a protective record for the reviewing courts, again reminded defendant of the pleas available to him, his right to trial by jury and of his right of confrontation. Defendant entered a plea of "not guilty."

Immediately following entry of the not guilty plea, defense counsel indicated that he had discussed with defendant the nature of the trial that defendant was entitled to, and that defendant wished to submit the matter on the basis of the preliminary transcript, subject to any supplemental evidence either side desired to produce. The significant parts of the exchanges among the court, counsel, and defendant are set forth in the margin.[9] After the colloquy noted, the court then fixed February 19 as the date for trial without jury.

When the case was called *for trial* defense counsel again stated that he had discussed the matter with defendant and had explained to defendant

---

[9]"MR. ALLEN [defense counsel]: I have discussed this matter with the Defendant as to the nature of the trial the Defendant is entitled to and I have told him and he knows, I believe, his right to a jury trial. And I believe after discussion with the Defendant, he has indicated to me knowledgeably that he does not desire a jury trial. And for the purpose, for the several reasons and primarily to expedite the hearing on these matters, he would like to have a trial before the Court. It would be his hope that perhaps the matter could be submitted to the Court for decision upon the basis of the transcript of the preliminary hearing for determination, subject to the District Attorney's Office, if they desire to do so, supplemental evidence and subject to Defendant's supplemental evidence if they so desire, and for the purpose of setting an early date for trial.

"THE COURT: Yes. Now, Mr. Moreland, you do understand that you personally have a right to a jury trial. I think I explained that to you.

"THE DEFENDANT: Yes, I understand.

"THE COURT: And you personally waive that, knowing the full *affect* of what you do—you are entitled to a jury trial.

"THE DEFENDANT: Yes, Your Honor, I understand.

"THE COURT: And you have heard your attorney's statement to me that you have talked it over with him and considered the matter from all angles and feel that you want to waive a jury trial, is that correct?

"THE DEFENDANT: Yes, I do.

"THE COURT: And you understand the *affect* of what you are doing. I am not urging you to do it or urging you not to do it.

"THE DEFENDANT: I understand.

"THE COURT: Now, so far as the District Attorney is concerned, what is your feeling? I think the People have a right to jury trial as well as the Defendant. Are you willing to waive a jury trial?

"MR. JENNINGS [the prosecutor]: Yes, Your Honor."

his right to jury trial and the presentation of evidence, and that "Defendant has indicated to me he is ready and willing to submit the case to the Court upon the transcripts of the proceedings had heretofore." Defense counsel then offered a stipulation "to submit it to the Court on the transcript of the Preliminary Hearing and of the other proceedings held in the Court already," stating that he had "no further argument to make and would incorporate the arguments made for the Court on the motion of 995." The prosecutor joined in the stipulation. Defendant was not questioned concerning the stipulation, nor did he make any objection to the submission. The court asked whether counsel had any further assistance for the court on the claimed refusal to permit defendant a telephone call, and both counsel replied in the negative.

The court, in convicting defendant, found "no alternative but to find in absence of some other matter" that defendant was guilty as charged.[10] The case was then referred to the probation officer for a report and the matter was continued to March 9. On the latter date, when defendant was asked whether he had any legal cause to show why judgment should not be pronounced, he answered in the negative. Defense counsel added: "The defendant does have some legal causes, your Honor, but he has previously urged these causes and we have nothing further to present than what was previously urged on the trial and on the motion made here. Nothing further." Defendant was then sentenced to a concurrent term; execution thereof was stayed pending the outcome of defendant's March 17, 1970, trial on a separate offense.

■ On the record before us, submission of defendant's case on the transcript of the preliminary examination and on the ancillary proceedings in superior court practically insured that he would be convicted of escape. The People argue, however, that the record shows an acceptable waiver of defendant's traditional rights, i.e., that it affirmatively appears that defendant desired and acquiesced in submission of his case for decision in the abbreviated fashion selected, and that he made no objection at the time of the stipulation for submission.

The People's position is at least arguable, upon the basis of the proceedings and colloquy we have set out in footnotes 8 and 9, *supra,* but we find it untenable[11] in the light of *Mosley's* caution that "in the future" use of

---

[10]The court made this significant comment before announcing the finding of guilt: "Well, I think probably what we are doing here actually is this, we are building a test of the propriety of the Court's ruling on 995 and the other. I can think of no more precise and exact way of doing it than it is done here."

[11]We are drawn to this conclusion by a combination of factors: Defendant's limited participation in the critical courtroom exchanges; his lack of personal participation or

such stipulations which in the circumstances of a particular case equate with a plea of guilty "must be accompanied by an affirmative showing on the record that the defendant waives his right to freedom from compulsory self-incrimination, his right to trial by jury, and his right to confront his accusers. (See *Boykin* v. *Alabama, supra,* 395 U.S. 238, 243-244 [23 L.Ed.2d 274, 279-280, 89 S.Ct. 1709].)" (*In re Mosley, supra,* fn. 10 at p. 926.)

We will affirm the judgment, however, upon another basis. It is abundantly clear—from defendant's first appearance in the justice court throughout all proceedings in superior court, including sentencing—that the sole thrust of defendant's strategy was first, to have the complaint—and later, the information—dismissed. His attack, as we have shown at length, was based on the claimed violation of section 851.5. However unmeritorious the premise, which was adopted by the defendant personally and persistently pursued by his counsel, it was the legal significance of the asserted violation of his telephone privilege which became the core of his attack upon the charge.

If there was any doubt or question to be raised concerning defendant's guilt of the charge of escape, it was neither mentioned nor suggested—notwithstanding his plea of not guilty—in any of the hearings before either court. The entire proceeding thus became a mere vehicle to test the legal significance of the claimed improper abridgment of his rights under section 851.5, *if* the trier of fact—either the magistrate or superior court judge—could be persuaded that the statute had in fact been violated, and further, to reserve that issue as a question of law for consideration by a reviewing court.

That this was defendant's purpose became evident early in the preliminary examination. When the suggestion arose that defendant might desire a continuance of the hearing in order to permit him to obtain counsel of his own choice in order to remedy, if possible, the "prejudice" assertedly suffered by him, he rejected the suggestion (see fn. 6, *supra*), stating that he sought only to have the complaint stricken. It was further demonstrated by defendant's extensive testimony during the preliminary examination and by his counsel's cross-examination of the undersheriff on the same subject. We have heretofore reviewed the progress of the controversy through superior court, and noted the court's comment (see fn. 10, *supra*), regard-

---

personal assent (in fact, his total silence) at the point of actual submission of the case on the day of trial; the court's focusing of primary emphasis on the effect of waiver of trial by jury without parallel explanation of the effect of submission on the transcript; and the absence of an express waiver (except of the right to trial by jury) *by defendant* of his several fundamental rights—particularly, the right of confrontation.

ing the test case defendant was constructing. Lastly, and as late as the time of sentence, although defendant urged no legal cause, his counsel urged the same issue as cause why judgment should not be pronounced against defendant.

Turning to the ultimate question at issue—defendant's innocence or guilt of the crime of escape—the correctional officer's testimony at the preliminary examination was sufficient—standing alone—to demonstrate defendant's guilt beyond a reasonable doubt. Cross-examination by defense counsel was perfunctory in effect, cast no doubt upon that officer's testimony, and merely explored the time and circumstances of the search for defendant, the physical facilities, and the geographical features of the Conservation Camp at Plum Creek. The testimony of the correctional officer thus stood unshaken and undisputed.

It has been pointed out by our Supreme Court that the protection of federally guaranteed constitutional rights of the type here at issue is not capable of circumscription by precise guidelines (*In re Tahl, supra,* p. 130 —acceptance of guilty plea), and that application of the controlling principles calls for analysis of the particular facts of the case at bench (*In re Mosley, supra,* fn. 9, pp. 924-925—submission on preliminary transcript). The decision in *Mosley* anticipated the obvious possibility that there would be cases in which submission on the preliminary transcript would not be the *practical* equivalent of a plea of guilty. Disavowing any attempt at all-inclusive exemplification, the court in *Mosley,* as one such possibility, postulated the situation "wherein the facts revealed at the preliminary examination are essentially undisputed but counsel seeks to make an argument to the court as to the legal significance to be accorded them." (*Id.,* pp. 924-925, fn. 9.)

Although the case at bench does not present a direct analogy to the *Mosley* example, we believe, after examination of the entire record, that we are faced with a proper instance for application of that principle.

Here, as we have seen, the facts regarding the escape charge were undisputed and simple: defendant, legally committed and confined to the conservation camp, departed the camp without permission and was apprehended several hundred miles from the site of his legal confinement. The evidence surrounding the telephone incident was in debatable conflict, of course, but both the magistrate and a superior court judge had ruled adversely to defendant on this question, and the issue was not one which would be relevant at trial of the escape charge. As the trial judge recognized, submission of defendant's case in the manner shown by the record appears to have been employed as a convenient and expeditious means of testing and reviewing the claimed abridgment of defendant's rights under section

851.5. Since we have determined that the latter contention is without merit, reversal of the judgment is not compelled.

■ Lastly, we raise and consider the question whether, in the circumstances, defendant was denied effective representation by trial counsel. In view of the escape facts disclosed at the preliminary hearing, there seems little likelihood that a persuasive factual defense was available to defendant, and the record suggests none. As shown by the preliminary transcript, the correctional officer who discovered that defendant was missing from the camp had also observed defendant up and about his quarters several hours before the time of his disappearance, and there is no indication that defendant was intoxicated or laboring under any other affliction which might have affected his judgment. The tactics pursued throughout by counsel (at defendant's request) were not wholly lacking in reason, and their failure must be measured in light of the fact that defendant, after all that was said and done, received a concurrent term on the new violation. We reject, therefore, any suggestion that the proceedings were reduced through counsel's conduct to a farce or a sham. (*People* v. *Ibarra* (1963) 60 Cal.2d 460, 464 [34 Cal.Rptr. 863, 386 P.2d 487].)

The judgment is affirmed.

Pierce, P. J., and Friedman, J., concurred.

On March 9, 1971, the opinion was modified to read as printed above.