[Crim. No. 21049. Second Dist., Div. Five. Apr. 5, 1973.]

THE PEOPLE, Plaintiff and Respondent, v.
WILLIAM MILES PHILLIPS, Defendant and Appellant.

484

**COUNSEL**

Herbert F. Blanck, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Edward A. Hinz, Jr., Chief Assistant Attorney General, William E. James, Assistant Attorney General, James H. Kline and William S. Abbey, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**KAUS, P. J.**—In an indictment returned by the Grand Jury of Los Angeles County on December 4, 1968, defendant and 10 others were indicted on 15 felony counts. Count I charges a conspiracy (Pen. Code, §§ 182, subd. 1, 182, subd. 4); counts II, III, IV, V, VI, X, XI and XII charge theft by credit card (Pen. Code, § 484g); counts VII, VIII and IX charge forgery (Pen. Code, § 470); count XIII charges possession of blank checks with intent to defraud (Pen. Code, § 475); and counts XIV and XV charge credit card forgery (Pen. Code, § 484f).[1]

Defendant eventually pleaded not guilty and waived trial by jury. Defendant personally waived his right to confront and cross-examine all witnesses against him, and it was stipulated that the case be submitted to the court on the transcript of the proceedings before the grand jury,

---

[1]In a separate three-count indictment filed the same day defendant was charged with selling marijuana (Health & Saf. Code, § 11531), possession of cocaine (Health & Saf. Code, § 11500), and possession of marijuana (Health & Saf. Code, 11530). Defendant was apparently found guilty as charged, and his conviction was upheld on appeal (2d Crim. No. 19118, Div. Three, Aug. 24, 1971). Defendant was sentenced to state prison for the terms prescribed by law as to the first and second counts of the indictment, the sentences to run concurrently. As to the third count he was sentenced to one year in the county jail, concurrent with the sentence on the first and second counts. In addition, the entire sentence was ordered to run concurrently with the sentence in the case now before this court.

Defendant requests that we "review the proceedings subsequent to his appeal" in the other case "to insure that the court's orders have been complied with and defendant's rights have been protected." That case is not before us now, however, and we limit our examination to the case at hand.

eliminating therefrom the testimony of one John Sherman. Defendant also reserved the right to present additional witnesses.[2] It was stipulated by counsel that the submission in this case was not within the terms of *In re Mosley*, 1 Cal.3d 913 [83 Cal.Rptr. 809, 464 P.2d 473]. The court was advised by the prosecuting attorney that without the testimony of John Sherman the evidence before the court was insufficient to support convictions under counts II, III, IV, V, VII, VIII and IX of the indictment, and accordingly defendant was found not guilty of those charges. After a brief argument on the sufficiency of the evidence as to the remaining counts, defendant was found guilty of the conspiracy charged in count I.[3] He was sentenced to state prison for the term prescribed by law, the sentence to run concurrently with that in another case. (See fn. 1, *supra.*)

The evidence consisted largely of the testimony of Sergeant Taylor, who acted as an undercover officer in the investigation of the activities of defendant and his codefendants. Taylor observed them and participated with them in the use of lost and stolen credit cards and the passing of forged payroll checks. The details of these activities need not be set forth here.

## I.

Despite trial counsel's stipulation to the contrary, defendant argues on appeal that his submission of the case on the transcript of the grand jury proceedings was, under the circumstances, tantamount to a plea of guilty. The procedure demanded by *In re Mosley*, 1 Cal.3d 913 [83 Cal.Rptr. 809, 464 P.2d 473] was admittedly not followed here. Defendant argues that his conviction must therefore be reversed.

Obviously trial counsel's agreement that *Mosley* was not applicable to this case is not conclusive on our determination of that question. Counsel cannot waive indirectly the very constitutional rights which *Mosley* dictates must be personally waived by defendant. (*In re Mosley, supra,* 1 Cal.3d 913, 924, 926, fn. 10.) Nevertheless, defendant's contention is without merit. While submission of a defendant's case on the transcript

[2]It was apparently also stipulated that defendant would be found guilty on not more than one count of the indictment. The stipulation in its final form is not part of the record on appeal; however it is clear that that provision of the stipulation was adhered to.

[3]The court initially found defendant guilty "as charged." When reminded of the terms of the stipulation entered into by counsel before trial, the court vacated its order finding him guilty of all counts, except as to count I. The remaining counts were dismissed on motion of the People at the time of defendant's sentencing.

of the testimony before the grand jury might in many cases be tantamount to a plea of guilty, in this case it was not.

There are a number of features which distinguish this submission from the one in *Mosley*. Here the case was submitted with a reservation that additional witnesses may be called by either side. None, however, was called. We note also that the testimony of one of the major witnesses before the grand jury was excluded from the trial court's consideration. Finally, while the facts were apparently not in dispute, there was argument by counsel as to the legal sufficiency of the evidence. None of these factors was present in *Mosley*.

Footnote 9 of the *Mosley* opinion (*In re Mosley, supra,* 1 Cal.3d fn. 9, pp. 924-925) specifically excepts from the operation of the *Mosley* rule ". . . a case wherein the facts revealed at the preliminary examination are essentially undisputed but counsel seeks to make an argument to the court as to the legal significance to be accorded them."

It is, of course, true that in this case the argument with respect to the "legal significance" of the facts was rather brief and, as will be seen in part III of this opinion, doomed. All the same, for reasons which we shall now explain, we do not believe that we should make the outcome of this appeal depend on the length of the argument or the odds for its success.[4]

The net effect of the constitutional principle recognized in *Boykin* v. *Alabama,* 395 U.S. 238 [23 L.Ed.2d 274, 89 S.Ct. 1709]; *Brookhart* v. *Janis,* 384 U.S. 1 [16 L.Ed.2d 314, 86 S.Ct. 1245]; *In re Tahl,* 1 Cal.3d 122, 129-131 [81 Cal.Rptr. 577, 460 P.2d 449]; and *In re Mosley,* 1 Cal.3d 913 [83 Cal.Rptr. 809, 464 P.2d 473] is that when a defendant pleads guilty, quickly or slowly, a plea entered by counsel, unaccompanied by certain personal waivers from the defendant, is unsafe at either speed. We ourselves effectuate that principle by holding that a submission on a transcript which is, in reality, a plea of guilty, cannot be transformed into a trial by counsel's say-so. If we are correct so far, the same result might logically follow if, in lieu of counsel's stipulation that "this is not a *Mosley* situation," he achieves the same result by making a hopeless argument "as to the legal significance" of the contents of the transcript.

We must, however, draw the line somewhere. In every appeal from a conviction after a submission on the transcript the argument, if any,

---

[4]We disregard the fact that appointed appellate counsel repeats the same argument which we reject on its merits. (See part III, *infra.*) The law as announced in cases such as *In re Smith,* 3 Cal.3d 192 [90 Cal.Rptr. 1, 474 P.2d 969] more or less forces him into what may seen an inconsistent appellate posture.

with respect to the legal significance of the facts revealed by the transcript was of necessity unavailing in the trial court. If that court was wrong, our present problem does not arise. If it was right—as it was in this case—appellate hindsight would enable us to characterize the vast majority of such submissions as "hopeless" and, therefore, in fact, as pleas of guilty. This would rob the situation envisaged by the *Mosley* footnote of any practical significance.

We therefore conclude that as long as it appears that the argument is put forward in good faith, we should accept it as such. We are precluded from making the outcome of the appeal depend on the chances for its success in the trial court.

## II.

Defendant next contends that he was denied the effective assistance of counsel below, in that no defense at all was presented. This, he argues, demonstrates a lack of investigation by counsel. Defendant notes that counsel did not raise the defenses of lack of agreement to the conspiracy, mistaken identity, or alibi. He finally argues in this regard that defendant was no better off for the submission of his case on the transcript than he would have been with a jury trial.

We, of course, do not know whether defendant was better off or not. Without a crystal ball, neither does defendant. The stipulation, however, was not without benefits to defendant. For example, it was agreed that defendant could be found guilty of no more than one count of the indictment. In reference to the defenses not raised by counsel below, it must be remembered that the evidence before the court consisted of the testimony of Sergeant Taylor, who participated with defendant in the crimes charged as part of an undercover investigation for a period of 20 days. Under these circumstances it is unlikely that evidence of mistaken identity or alibi, suggested by defendant on appeal, could be available. Furthermore, trial counsel did in fact argue the legal insufficiency of the facts to show the agreement necessary for a conspiracy. Finally, defendant has not shown the existence of any evidence or legal theory which could have been used in his defense which was not discovered by trial counsel.

Thus defendant has failed to establish the "demonstrable reality" of his allegations of inadequate representation. (*People* v. *Reeves,* 64 Cal.2d 766, 774 [51 Cal.Rptr. 691, 415 P.2d 35].) The failure to present a defense was just as likely caused by the fact that none was available. The trial was not reduced to a "farce or a sham." (*People* v. *Ibarra,* 60 Cal.2d 460, 464 [34 Cal.Rptr. 863, 386 P.2d 487].)

### III.

■ Finally, defendant challenges the sufficiency of the evidence to support his conspiracy conviction; specifically he contends that there was no evidence showing the essential agreement, and that the circumstances raise no more than a suspicion of such an agreement. Viewed as a whole the picture presented by the evidence is one of two stolen credit cards and check passing enterprises; one directed by codefendant Kazni and one by defendant. Taylor's undercover activities were more intimately involved with Kazni's ring than with defendant's, and his testimony is more detailed as to Kazni. While there is continual reference throughout the testimony to indications that Kazni and defendant were in competition with one another, there is also evidence of continuous cooperation and dealing between them. Taylor characterized their relationship in his testimony: ". . . although [Kazni] worked with [defendant] on various things, . . . he didn't really want [defendant] to know what he was doing, what specific cards or the kind of merchandise he was purchasing. And [defendant] was the same way about Kazni. Although they kind of worked together, they really tried to keep things from each other." We find this to be an accurate representation of the conspiracy between Kazni, defendant, and many others. No purpose would be served by recounting the particulars of defendant's activities here. Assuming in favor of the judgment every fact reasonably deducible from the evidence, it is sufficient to support the conviction. (*People* v. *Redmond,* 71 Cal.2d 745, 755 [79 Cal.Rptr. 529, 457 P.2d 321].) More specifically, of the overt acts alleged in connection with the conspiracy indictment against all defendants, numbers 9, 10 and 25 directly involve defendant and there is a connection between defendant's activities and overt acts 12, 13 and 26.

The judgment is affirmed.

Stephens, J., and Cole, J.,* concurred.

Appellant's petition for a hearing by the Supreme Court was denied May 30, 1973.

---

*Assigned by the Chairman of the Judicial Council.