[Crim. No. 4735. Fourth Dist. Div. Two. Mar. 31, 1972.]

THE PEOPLE, Plaintiff and Respondent, v.
RAYMOND FREDERICK SANCHEZ, Defendant and Appellant.

## COUNSEL

Nasatir, Sherman & Hirsch, Victor Sherman, and Harry E. Weiss for Defendant and Appellant.

Evelle J. Younger, Attorney General, William E. James, Assistant Attorney General, and Mark A. Levin, Deputy Attorney General, for Plaintiff and Respondent.

## Opinion

**KAUFMAN, J.**—Following defendant's unsuccessful motions in the superior court to suppress evidence (Pen. Code, § 1538.5, subd. (i)) and to set aside the information (Pen. Code, § 995), the case was submitted on the transcript of the preliminary hearing. The submission on the transcript was tantamount to a guilty plea and was actually part of a negotiated disposition. The court found defendant guilty of possession of marijuana (Health & Saf. Code, § 11530), alleged priors were stricken, probation was denied and defendant was sentenced to state prison.

Defendant appeals from the judgment contending: (1) the record does not disclose a proper advisement and waiver of his privilege against self-incrimination; (2) the evidence is insufficient to support his conviction; and (3) the incriminating evidence resulted from a search and seizure made pursuant to an invalid search warrant. In connection with the latter contention, defendant points to several irregularities in the proceedings in the municipal court prior to filing of the information. Although defendant asserts these irregularities in his arguments concerning the validity of the search warrant, they are more appropriately germane to the question whether defendant's motion to set aside the information was improperly denied.

### Privilege Against Self-Incrimination

The information charged defendant and Joan Kathy Sanchez, also known as Joan Weimer,[1] jointly with one count of possession of marijuana (Health & Saf. Code, § 11530). It was also alleged in the information that defendant had suffered two prior convictions of violation of Health and Safety Code, section 11530. Throughout the proceedings below, defendant and the female codefendant were represented by the same privately retained attorney. After their sections 1538.5 and 995 motions were denied, the case was submitted for decision on the basis of the transcript of the preliminary hearing. Following are pertinent excerpts from the transcript of the submission: "MR. CALLEN [defense counsel]: Submit on the transcript with the understanding that the priors be stricken and that Mr. Sanchez be found guilty of one count of 11530 of the Health & Safety Code; be referred to probation and Miss Weimer be found guilty of one count of

---

[1]At various times throughout the proceedings below the attorney representing defendant and Joan Sanchez, aka Weimer, attempted to stipulate that the true name of the female codefendant was Weimer. As noted, however, by the magistrate at the preliminary hearing, the female defendant at one point admitted that her name was Joan Kathy Sanchez, and we further note that on several occasions during the preliminary hearing she responded to questions addressed to "Mrs. Sanchez." She is not a party to this appeal.

11556, Health & Safety Code [being present where narcotics are being unlawfully used], one year summary probation and as a condition of probation she violate no law and that she submit to search and seizure.

"MR. PATTERSON [prosecuting attorney]: I believe for Mrs. Sanchez that the 556 was to be the lesser included of the 530 since it isn't alleged in that count.

"MR. CALLEN: Yes, Your Honor.

"THE COURT: Mr. Sanchez, is it your desire to waive your right to a trial by either judge or jury?

"DEFENDANT RAYMOND SANCHEZ: Yes, sir.

"THE COURT: And in effect you are going to have a trial by a Judge but you will waive your right to cross examine these witnesses that have testified at the Preliminary.

"DEFENDANT RAYMOND SANCHEZ: Yes, sir.

"THE COURT: *And you are going to waive your right to take the stand on your own behalf and explain this offense, although nobody can make you do it?* [Italics supplied.]

"DEFENDANT RAYMOND SANCHEZ: Yes, sir.

"THE COURT: And you are going to waive your right to call any witnesses you may desire to testify in your own behalf?

"DEFENDANT RAYMOND SANCHEZ: Yes, sir.

"THE COURT: And you want to submit it on the transcript to this Court knowing that the Court will find you guilty of possession of marijuana?

"DEFENDANT RAYMOND SANCHEZ: Yes, sir.

"THE COURT: And have you discussed this with Mr. Callen?

"DEFENDANT RAYMOND SANCHEZ: Yes, sir.

"THE COURT: Do you have any questions about it?

"DEFENDANT RAYMOND SANCHEZ: No, Your Honor.

"THE COURT: What was the suggested sentence on it?

"MR. CALLEN: Mr. Sanchez, he will be referred to Probation Department for a probation report.

"THE COURT: Mr. Sanchez, the offense has a one to ten; do you understand that this carries a possible sentence of one to ten years, State prison?

"DEFENDANT RAYMOND SANCHEZ: Yes, sir.

"THE COURT: No promises as to what you might get out of this?

"DEFENDANT RAYMOND SANCHEZ: That is right."

". . . . . . . . . . . . . . . . . . . . . . .

"THE COURT: The court will find—Mr. Callen, your concur with the submission?

"MR. CALLEN: Yes, Your Honor. The reason for submitting on the report [*sic*] is the case of People versus White which is up before the U. S. Supreme Court.[2] That is the reason for submitting.

"THE COURT: Find the defendant [Raymond Frederick Sanchez] guilty of 11530."

In accordance with the understanding stated by defense counsel, the female codefendant was found guilty of a misdemeanor violation of Health and Safety Code, section 11556 and granted summary probation and defendant was found guilty of violating section 11530 and referred to the probation office for investigation and report. Subsequently, again in accordance with the understanding stated by defense counsel, defendant's alleged prior convictions were ordered stricken.

██ Unquestionably, defendant is correct in characterizing the submission on the transcript in the case at bench as tantamount to a guilty plea. While defendant argued insufficiency of the evidence at the preliminary hearing and attempts to argue that point on appeal (*infra*), no such argument or contention was presented to the trial court at the time of submission. On the contrary, the submission was made on the express understanding that defendant would be found guilty of a violation of Health and Safety Code, section 11530, and the court told defendant that he would be found guilty of that offense. Manifestly, the submission of the case in this fashion was part of a negotiated disposition by which, in

---

[2]As hereinafter detailed, the magistrate who issued the original search warrant in the case at bench had listened to a tape recording of a telephone conversation between defendant and a confidential informant named Salas. The recording was made with the consent of Salas, but defendants nevertheless contended in their 995 and 1538.5 motions that the recording constituted a constitutionally impermissible search and seizure. The case referred to by defense counsel was undoubtedly *United States* v. *White*, 401 U.S. 745 [28 L.Ed.2d 453, 91 S.Ct. 1122] decided April 5, 1971, several months after the submission in the case at bench. The decision in that case no doubt accounts for the fact that defendant does not assert on appeal that the recorded telephone conversation was itself an unlawful search or seizure.

substance, defendant agreed to plead guilty to the offense charged in exchange for having stricken the alleged prior convictions which, otherwise, might have substantially increased the minimum period of defendant's imprisonment (see Health & Saf. Code, § 11530). Indeed, according to defense counsel's statement, the only reason for submitting on the transcript rather than entering a plea of guilty or *nolo contendere* was the preservation of defendant's right to seek appellate review of the validity of the search warrant on the basis of an issue involved in *United States* v. *White,* 401 U.S. 745 [28 L.Ed.2d 453, 91 S.Ct. 1122]. (See fn. 2, *ante,* and accompanying text.)[3]

■ Noting its recent decision in *In re Tahl,* 1 Cal.3d 122, 132 [81 Cal.Rptr. 577, 460 P.2d 449], interpreting *Boykin* v. *Alabama,* 395 U.S. 238 [23 L.Ed.2d 274, 89 S.Ct. 1709], the California Supreme Court in *In re Mosley,* 1 Cal.3d 913, 926, fn. 10 [83 Cal.Rptr. 809, 464 P.2d 473], instructed that, ". . . in the future the use of stipulations which, in the circumstances of the particular case, are *in fact* tantamount to a plea of guilty . . . must be accompanied by an affirmative showing on the record that the defendant waives his right to freedom from compulsory self-incrimination, his right to trial by jury, and his right to confront his accusers." (Original italics; see also *People* v. *Gallegos,* 4 Cal.3d 242, 248 [93 Cal.Rptr. 229, 481 P.2d 237].) Initially, the Attorney General urges that the quoted language from the footnote in *Mosley* later quoted in the text of *Gallegos* was a dictum; that, insofar as the enumeration of rights is concerned, it was borrowed without express consideration of the rights involved from *Tahl* (1 Cal.3d at p. 132); and that, even though a particular submission on the transcript of the preliminary hearing may be tantamount to a guilty plea, it is nevertheless not an express admission of guilt and that, therefore, no express waiver of the privilege against self-incrimination is required. On other facts this argument might have some appeal,[4] but,

---

[3]The notion of defense counsel that it was necessary to submit on the transcript rather than plead guilty to preserve the right to appellate review of this issue was, of course, erroneous. (See Pen. Code, § 1538.5, subd. (m); *People* v. *Rose,* 267 Cal. App.2d 648, 649 [73 Cal.Rptr. 349]; *Moran* v. *St. John,* 267 Cal.App.2d 474, 475-478 [73 Cal.Rptr. 190].)

[4]A waiver of a privilege against self-incrimination is, of course, required with respect to a guilty plea because by pleading guilty a defendant admits in open court that he committed the acts charged. "He thus stands as a witness against himself . . . ." (*Brady* v. *United States,* 397 U.S. 742, 748 [25 L.Ed.2d 747, 756, 90 S.Ct. 1463]; see also *Boykin* v. *Alabama, supra,* 395 U.S. 238, 243 [23 L.Ed.2d 274, 279]; *In re Tahl, supra,* 1 Cal.3d at p. 130.) In a submission on the transcript, however, even when it is tantamount to a guilty plea, a defendant does not literally stand as a witness against himself.

Interestingly, aside from the quoted language in footnote 10 of the *Mosley* opinion (1 Cal.3d at p. 926) and the quotation of that language in *Gallegos* (4 Cal.3d at p. 248), there is not one word in either *Mosley* or *Gallegos* concerning the privilege

where, as here, the submission is made on the express understanding that guilt be found, the defendant is expressly informed he is going to be found guilty, and the submission is in fact a plea of guilty made as part of a negotiated disposition, it cannot prevail.

Alternatively, however, the Attorney General contends that the record contains a sufficient affirmative showing that defendant was aware of and waived his privilege against self-incrimination to the extent required by *Mosley* and *Gallegos*. This contention is sound. As noted in *Tahl*, the advisement of rights ". . . does not require the recitation of a formula by rote or the spelling out of every detail by the trial court. It does mean that the record must contain *on its face* [original italics] direct evidence that the accused *was aware, or made aware* [italics supplied], of his right to confrontation, to a jury trial, and against self-incrimination. . . ." (1 Cal.3d at p. 132; see also *In re Sutherland*, 6 Cal.3d 666, 669-670 [100 Cal.Rptr. 129, 493 P.2d 857].)

The record does contain on its face direct evidence that defendant was aware or made aware of his right against self-incrimination. In the italicized portion of the excerpts from the transcript of the submission, *ante*, the court, although it did not use the word "self-incrimination," did advise defendant, in substance, that nobody could compel him to testify against himself. There can be no question but that defendant knew full well he was, in effect, pleading guilty. The submission was made on the express understanding that he be found guilty, and the court expressly informed defendant he would be found guilty. Disclosing the court's admonition to defendant that he could not be compelled to testify against himself and his knowledge that he was, in effect, pleading guilty, the record demonstrates a voluntary, intelligent waiver of the privilege against self-incrimination by defendant to the extent required by *In re Mosley, supra*, 1 Cal.3d 913.

### Validity of the Search Warrant

The search warrant was originally issued on December 12, 1969, by a judge of the Municipal Court of the South Orange County Judicial District.

---

against self-incrimination. Indeed, in *Mosley* the "panoply of rights" specifically described were the "right of a person accused of crime to plead not guilty to the charge and have a trial by a jury of his peers wherein he can defend himself by confronting and cross-examining witnesses against him and by presenting witnesses in his own behalf." (1 Cal.3d at p. 924.) In *Gallegos* the court commended the trial judge and defense counsel for their "foresight here in anticipating *Mosley* . . . ." (4 Cal.3d at p. 248.) However, when one examines the questions and answers in the submission proceeding which appear to be set forth in full in footnotes to the opinion (4 Cal.3d at pp. 245-246, fns. 1 and 2), no express mention of the right against compulsory self-incrimination or waiver thereof is found.

It commanded immediate search at any time of the day or night of the premises at 33935 Street of the Copper Lantern in Dana Point and the persons of defendant and the female codefendant for heroin, peyote, barbiturates, amphetamines and evidence of identity and ownership. The warrant was issued on the basis of an affidavit dated December 12, 1969, by Daniel Fleischer, a state narcotics agent, and an affidavit dated December 12, 1969, by Alfred Salas, a confidential informant.[5] Both Fleischer and Salas appeared before the magistrate, and, in determining the reliability of the information supplied, the magistrate examined Salas under oath and in his presence listened to a tape recording of a telephone conversation between Salas and defendant earlier in the afternoon of December 12.

The only affidavit referred to on the face of the warrant is that of Agent Fleischer. The affidavit of Salas, who at that time was a confidential informant, was sealed by the magistrate in an envelope on the outside of which the magistrate made a signed statement setting forth the procedure followed by him, including his examination of the informant under oath and the execution of the affidavit by the informant under oath administered by the magistrate. The sealed envelope and the tape recording of the telephone conversation were thereafter, until disclosure of the informant's identity, held in a police evidence locker at the Laguna Beach jail pursuant to order of the magistrate. The court's search warrant docket made no reference thereto.

Salas' affidavit contained the following pertinent information. Salas had known defendant for more than two years. Until three months prior to December 12, 1969, Salas was a regular "client" of defendant and had made regular purchases of heroin from him. Approximately three months prior to December 12, 1969, Salas purchased 30 ounces of heroin from defendant at defendant's residence, 33935 Street of the Copper Lantern in Dana Point. The heroin was laid out on a table in the kitchen in condoms containing two ounces each. After ascertaining by tasting it that the heroin was of good quality, Salas paid defendant $9,000 for it. Defendant's "wife" was present during the sale. At the time of the heroin transaction, Salas asked defendant for some benzedrine for personal use. Defendant invited Salas to his bedroom and from his bedroom closet took a 16-ounce jar containing "about 500 benzedrine." While the closet was open, Salas "saw approximately 20 capsules of peyote and a few seconals." "During the past two days" Salas contacted defendant by telephone and asked defendant to sell him from three to seven ounces of heroin. Defendant stated

---

[5]Defendant's motion for disclosure of the identity of the confidential informant was granted prior to his first motion to suppress.

that he had only a small quantity of heroin available at the moment "but that he expected to have close to a kilogram available for sale either on Sunday, December 14, 1969 or on Monday, December 15, 1969." Salas generally made purchases from defendant during the night hours, "and during the telephonic conversation of two days ago" with defendant, Salas arranged to pick up the heroin during the night hours.

The affidavit of Agent Fleischer dated December 12, 1969, contains for the most part a repetition of the information supplied by Salas. It adds only that the information received from the informant included that the female codefendant was the wife of defendant; that Fleischer had known the informant for more than four months and on numerous occasions had seen "peddlers and addicts" go to the residence of the informant and had seen the informant in the company of known convicted peddlers; and that official records showed that defendant was convicted on December 23, 1965, for possession of marijuana and on March 30, 1967, for possession of heroin for sale.[6]

The magistrate's examination of Salas under oath was apparently not reported. The record does contain, however, a transcription of the tape-recorded telephone conversation between Salas and defendant heard by the magistrate in assessing the reliability of the information contained in the affidavits. We do not think it necessary to repeat in detail the conversation. Suffice it to say that the recorded conversation tended to corroborate the information in Salas' affidavit on numerous points. It indicated that he had known defendant for some time and that he had previously purchased contraband from defendant; that defendant had on hand only about 50 "papers" of heroin but that he was expecting in the next day or two a visit from a person from whom he might obtain a kilo; and that Salas did make at least tentative arrangements with defendant to purchase a substantial quantity of heroin. While defendant's responses concerning the date he would obtain the heroin were equivocal and evasive, near the end of the conversation he informed Salas that the person he was expecting would be back (apparently from Mexico) by the next day, that defendant would talk to him about the kilo, and that the person would "just go right back [apparently to Mexico] and run it, you know." In anticipation of a tele-

---

[6]At the motion to suppress first made before the issuing magistrate, it was developed that, in fact, the second conviction was not for possession of heroin for sale (Health & Saf. Code, § 11500.5) but for possession of marijuana (Health & Saf. Code, § 11530) following a charge of either selling marijuana (Health & Saf. Code, § 11531) or possession of marijuana for sale (Health & Saf. Code, § 11530.5). Agent Fleischer had obtained the information set forth in his affidavit concerning the prior convictions from an erroneous "rap sheet."

phone call from defendant, Salas stated he would draw $5,000 out of the bank.

The recorded telephone conversation was initiated by Salas to defendant in the presence of Agent Fleischer on Friday, December 12, 1969 at 3:40 p.m. Salas first placed a call to a telephone number in Dana Point, which, from the conversation of the person answering, was inferentially defendant's residence. The person answering called Salas by his first name and informed Salas that defendant could be reached at the telephone number of the Red Lion, apparently a bar.

Defendant first contends that there was no sufficient showing that the informer was reliable. This contention is without merit. In the first place, the question is not whether the informant was reliable but whether the magistrate could reasonably rely upon the information supplied to him under the circumstances. (*People* v. *Lara*, 67 Cal.2d 365, 375 [62 Cal. Rptr. 586, 432 P.2d 202]; *People* v. *Sandoval*, 65 Cal.2d 303, 308-309 [54 Cal.Rptr. 123, 419 P.2d 187]; *In re Golia*, 16 Cal.App.3d 775, 781-782 [94 Cal.Rptr. 323].) Under the authority of *Skelton* v. *Superior Court*, 1 Cal.3d 144 [81 Cal.Rptr. 613, 460 P.2d 485] there is no question but what the magistrate could reasonably rely on the information supplied him in the case at bench.

Defendant is correct that the statements in Agent Fleischer's affidavit to the effect that Salas was known to associate with peddlers and addicts are insufficient to establish Salas as a tested informant. It is also true that the averments therein concerning defendant's prior convictions were erroneous to the extent they asserted a prior conviction of possession of heroin for sale. Nevertheless, Fleischer's information that defendant had previously suffered one or more convictions of drug offense was apparently correct and constituted a circumstance to be considered by both the officer and the magistrate. (Cf. *People* v. *Jackson*, 198 Cal.App.2d 698, 707 [18 Cal. Rptr. 214].) Moreover, Salas' telephone conversation with defendant corroborating Salas' information in many particulars was had in the presence of Agent Fleischer. More importantly, here, as in *Skelton*, the affidavit of the informant himself was factual in nature, disclosed the personal knowledge of the informant and included statements which would incriminate not only defendant but the informant himself. Here, as in *Skelton*, the informant appeared before and was examined under oath by the magistrate. (See Pen. Code, § 1526.) In addition, in the case at bench, as a part of his examination of Agent Fleischer and informant Salas, the magistrate had the benefit of listening to the tape-recorded telephone conversation between Salas and defendant which corroborated in many respects the statements

made and the information given in the affidavits. Under these circumstances the magistrate was fully justified in relying on the information supplied in the affidavits of Salas and Fleischer. (*Skelton* v. *Superior Court, supra,* 1 Cal.3d at pp. 152-154.)

■ Defendant urges, however, that neither Salas' affidavit nor the tape recording of the telephone conversation could properly be considered by the magistrate. With respect to the tape recording, the first argument is that a search warrant can be issued only on the basis of an affidavit (see Pen. Code, §§ 1525, 1526); that the tape recording was not an affidavit and thus cannot be used to justify issuance of the warrant. This argument must be rejected. In the first place, the affidavits of both Salas and Fleischer refer to and summarize the content of a telephone conversation between Salas and defendant, apparently the telephone conversation recorded.[7] Moreover, the magistrate heard the tape recording in connection with his examination under oath of Salas and Fleischer, and subdivision (a) of Penal Code, section 1526 expressly provides: "The magistrate may, before issuing the warrant, examine on oath the person seeking the warrant *and any witnesses he may produce* . . . ." (Italics supplied.) Obviously, the magistrate should be as well informed as possible, and the word "witnesses" in the subdivision should be broadly interpreted to include physical, documentary and any other competent evidence relevant to the issue of credibility.

■ Next, the argument is that Salas' affidavit cannot be used in support of the issuance of the search warrant because the warrant does not refer to that affidavit on its face. For this proposition defendant seeks support in Penal Code, section 1529, which in prescribing the form for search warrants, indicates that a search warrant should name on its face "every person whose affidavit has been taken." Although we are by no means certain that the effect of a failure to name on the face of a warrant every person whose affidavit was taken is to invalidate an otherwise validly issued search warrant, a question we shall explore somewhat further in connection with the problems concerning reissuance of the warrant, as respects the affidavit of Salas, this argument cannot prevail. Salas it will be remembered was a confidential informant, and Penal Code, section 1529 must be read in conjunction with Evidence Code, section 1041, subdivision (a) establishing a privilege in favor of public entities against disclosure

---

[7] Although the substance of the recorded telephone conversation would indicate that it is the same telephone conversation referred to in the affidavits, the affidavits, dated December 12, 1969 refer to a telephone conversation "during the past two days." The telephone conversation recorded occurred on the afternoon of December 12, only a few hours before issuance of the warrant.

of the identity of confidential informants under appropriate circumstances. To read Penal Code, section 1529 as requiring that a search warrant set forth on its face the name of a confidential informant upon whose affidavit the warrant has been issued would nullify the privilege of nondisclosure specified in the Evidence Code. Construing the statutes to achieve harmony (*Wemyss* v. *Superior Court*, 38 Cal.2d 616, 621 [241 P.2d 525]), we hold that, assuming Penal Code, section 1529 requires a search warrant to show on its face the name of every person whose affidavit has been taken, Evidence Code, section 1041, subdivision (a) creates an exception thereto with respect to the name of a confidential informant whose affidavit has been taken in support of issuance of a search warrant.[8]

Next, defendant urges that resort may not be had to Salas' affidavit nor the tape recording because, prior to disclosure of the informant's identity, they were not made a public record. In support of this argument defendant cites Penal Code, section 1534, subdivision (a) which, in pertinent part, provides: "The documents and records of the court relating to the warrant need not be open to the public until the execution and return of the warrant or the expiration of the 10-day period after issuance. Thereafter, if the warrant has been executed, the documents and records shall be open to the public as a judicial record."

For purposes of argument we here assume, but expressly do not decide, that an otherwise valid search warrant may be subsequently invalidated by failure to make public the affidavits upon which the warrant was issued. Once again, however, subdivision (a) of the Penal Code, section 1534 must be construed together with subdivision (a) of section 1041 of the Evidence Code establishing the privilege of nondisclosure of the identity of a confidential informant. For the same reason we rejected defendant's argument that the name of the confidential informant whose affidavit has been taken must appear on the face of the warrant, we reject his argument that the affidavit of a confidential informant must be made a public record prior to compelled disclosure of his identity. The result otherwise would be to nullify the nondisclosure privilege.

---

[8]To comply with the spirit of the direction in Penal Code, section 1529 to name "every person whose affidavit has been taken" and to make available to interested persons the maximum information concerning the foundation for the issuance of a search warrant as is consistent with the privilege against nondisclosure of the identity of confidential informants, the preferable practice when a search warrant is issued in whole or in part on the basis of an affidavit of a confidential informer should be to recite that fact on the face of the warrant. In addition, good judicial housekeeping would dictate an entry in the search warrant docket indicating that the affidavit of a confidential informer was received, without naming him.

■ Additionally, defendant contests the validity of the warrant on several other bases. He contends that the search warrant was overly broad because it commanded a search for heroin, peyote, barbiturates and amphetamines, whereas Salas' affidavit, even if otherwise sufficient, provided cause only to believe heroin would be present. Salas' affidavit, of course, set forth that three months previously he had seen in defendant's residence "approximately 20 capsules of peyote and a few seconals" as well as a 16-ounce jar "containing about 500 benzedrine." It is true, of course, that the information supplied must be closely enough related to the time the warrant is issued to justify the magistrate in entertaining a strong suspicion that the contraband is present in the place to be searched. (See *Sgro* v. *United States,* 287 U.S. 206, 210 [77 L.Ed. 260, 263, 53 S.Ct. 138, 85 A.L.R. 108]; *People* v. *Sheridan,* 2 Cal.App.3d 483, 490 [82 Cal.Rptr. 695].) Although the passage of three months' time would in many, if not most, situations render the information stale, in view of Salas' averments that he had been a regular "client" of defendant for a substantial period of time, and in view of the large number of benzedrine tablets observed, we would be reluctant to hold as a matter of law that the magistrate could not conscientiously entertain a strong suspicion that such contraband would still be present. In any event, however, even if the information concerning the contraband other than heroin be deemed too stale for permissible use, the warrant was not thereby invalidated. The authorization for a search for heroin necessarily included an authorization for a search of any place in which peyote or barbiturates might be hidden. Unlike *United States* v. *Hinton,* 219 F.2d 324, the authorization in the warrant to search for peyote and barbiturates did not enlarge the permissible scope or intensity of the search. Peyote or barbiturates found in an authorized search for heroin could have been seized in any event. (*Skelton* v. *Superior Court, supra,* 1 Cal.3d at p. 157.)

■ Turning to the authorization of the warrant to search for heroin, defendant contends that the warrant was invalid because the affidavits of Fleischer and Salas did not indicate that heroin was to be found at the place to be searched on December 12, the date of issuance, but only that it was expected to be present on December 14 or 15. Technically, this argument is factually incorrect. Both the affidavit of Salas and the tape-recorded telephone conversation established that defendant had on hand a small quantity, about 50 "papers" of heroin. In any event, the premise upon which this argument is based, that a warrant may never be issued in anticipation of the arrival of contraband was cogently and definitively rejected in *Alvidres* v. *Superior Court,* 12 Cal.App.3d 575, 581-582 [90 Cal.Rptr. 682]. We adopt the reasoning and authorities relied on by the court in *Alvidres.*

Defendant also asserts that the information presented to the magistrate was insufficient to support a strong suspicion that heroin would be present on December 14 or 15. He acknowleged, as he must, the statement in Salas' affidavit that defendant told him in a telephone conversation that "he [defendant] expected to have close to a kilogram available for sale either on Sunday, December 14, 1969 or on Monday, December 15, 1969." He urges, however, that the tape recording of the telephone conversation heard by the magistrate contains no such statement by defendant. It appears to be true (see fn. 9, *post*) that in the tape-recorded conversation defendant did not specifically state he would have the kilo of heroin on Sunday or Monday or the specific dates of December 14 or 15. As previously noted, however, near the end of the conversation, defendant informed Salas that the person he was expecting would be back (apparently from Mexico) by the next day (Saturday), that defendant would talk to him about the kilo, and that the person would "just go right back [apparently to Mexico] and run it, you know." In view of the previous dealings between Salas and defendant and the apparent familiarity of Salas with the importation of heroin from Mexico as disclosed by the recorded telephone conversation, the magistrate was not required to ignore Salas' interpretation of the conversation as indicating that defendant would have the "kilogram available for sale either on Sunday, December 14, 1969 or on Monday, December 15, 1969."[9]

■ Next, pointing to issuance of the warrant on December 12 and execution of the search on December 17 and relying upon *Cave* v. *Superior Court,* 267 Cal.App.2d 517 [73 Cal.Rptr. 167], defendant contends that delay in execution of the warrant rendered it void. Actually, this contention is spurious. As will be more fully set forth hereinafter, it was not the warrant as originally issued that was executed, but, the warrant as "reissued and revalidated" on December 16, 1969.

Moreover, defendant misreads the import of *Cave.* In *Cave* the magistrate was informed of five specific burglaries, together with information indicating that property stolen in the course of these burglaries was presently located at specified premises. Based thereon, on December 4, 1967, the magistrate issued a search warrant commanding immediate search. The warrant was not executed, however, until December 11, 1967, and the only

---

[9]The foregoing discussion gives defendant the benefit of any doubt as to whether the recorded telephone conversation was the same telephone conversation as that referred to in Salas' affidavit. (See fn. 7, *ante.*) It should be further noted that the recorded telephone conversation contains occasional phrases in Spanish with respect to which we have been furnished no English translation. When the magistrate heard the tape he had the benefit of Salas' presence.

cause for the delay in executing the warrant appeared to be the expectation by the executing officers that additional burglaries would be committed in the meantime and that additional evidence concerning these crimes could be obtained by delaying execution of the warrant. When the warrant was executed the property seized consisted primarily of property stolen during burglaries committed after issuance of the warrant. It was held only that a peace officer may not intentionally delay the execution of a search warrant in which immediate search is directed for a period of seven days for the purpose of apprehending additional evidence, including evidence of crimes not yet committed when the warrant was issued, notwithstanding the 10-day maximum time limit specified in Penal Code, section 1534. (267 Cal.App.2d at p. 519.) *Cave* did not determine the validity of a seizure based upon a delayed execution, within the 10-day limit, contemplated at the time the warrant was issued. (Cf. *Alvidres* v. *Superior Court, supra,* 12 Cal.App.3d at p. 582.) Neither did it determine the validity of a delayed execution based upon good cause which yielded only the items contemplated by the warrant. (See *People* v. *Perry,* 271 Cal.App.2d 84, 108-109, fn. 6 [76 Cal.Rptr. 725].)

It is perfectly apparent that, although the search warrant in the case at bench contained the usual language commanding immediate search, neither the magistrate nor Agent Fleischer contemplated that the warrant would be executed until December 14 or 15 after the anticipated arrival of the expected shipment of heroin. That this is true is evidenced by the actions of Agent Fleischer in seeking, and the magistrate in issuing, a revalidated warrant on December 16 when it was learned that the expected shipment had not arrived on December 14 or 15 (*infra*). Thus, it is also evident that Agent Fleischer did not believe that the warrant gave him blanket authorization to search at any time within the 10-day period specified by Penal Code, section 1534.

On December 16, 1969, Agent Fleischer reappeared before the same magistrate who issued the original warrant and, under oath, subscribed and presented to the magistrate an additional affidavit incorporating his affidavit of December 12 and setting forth the following additional information: "Affiant further states that he was not able to serve the warrant issued on December 12, 1969, in this case . . . . Affiant's investigation has shown that the shipment of heroin which was expected to be delivered to the above-named Sanchez and which is the objective of the December 12, 1969, warrant was not delivered on Saturday [December 13], Sunday [December 14] or Monday [December 15].

"Confidential informant called affiant on Monday, December 15, 1969, and stated that he had received a telephone call from said Sanchez who

told him that he, Sanchez, expected to be contacted by the runner (person who transports contraband across the boarder [*sic*]) on Monday, December 15, 1969, and that actual delivery of the heroin would take place either the 16th, 17th or 18th of December, 1969."

Rather than issuing a new search warrant, the magistrate caused the words "Reissued and revalidated," together with the date of December 16, 1969, to be typed on the face of the original warrant and resigned it. It was this "reissued and revalidated" warrant dated December 16, 1969, that served as the basis for the search on December 17.

Although there is no statutory authority for the revalidation and reissuance of a search warrant, we see no good reason why, within 10 days of the original issuance, an officer should be precluded from presenting supplemental information to the issuing magistrate, nor why the magistrate, based thereon, should not by appropriate endorsement revalidate and reissue the original warrant rather than issue an entirely new warrant. (Cf. *Sgro* v. *United States, supra,* 287 U.S. at pp. 211-212 [77 L.Ed. at pp. 263-264, 53 S.Ct. 138, 140-141].) Such a procedure is economical in terms of time, effort and paper work and accords with common sense. It certainly is preferable to a delayed execution of the original warrant which would raise the problems involved in *Cave* v. *Superior Court, supra,* 267 Cal.App.2d 517.

Defendant contests the validity of the reissued and revalidated warrant on several bases. First, he contends that the revalidation and reissuance of the warrant was not based on Agent Fleischer's affidavit dated December 16, 1969, nor any affidavit. This contention is founded upon the following facts.

Defendant's first motion to suppress was heard and denied by the issuing magistrate on June 22, 1970. (See Pen. Code, § 1538.5, subd. (b).) The deputy district attorney regularly handling the case was engaged in another trial so the People were represented by another deputy district attorney. Although Agent Fleischer was present, no testimony was taken. The matter was argued and submitted on the basis of the sufficiency of Fleischer's and Salas' affidavits of December 12, 1969, and the tape-recorded telephone conversation. Several times during the argument defense counsel urged that there was no basis in the record for the reissuance and revalidation of the warrant on December 16.[10] The judge stated that it was his recollection

---

[10]The warrant numbered 0010 was introduced into evidence together with a search warrant docket sheet bearing number 0010. This docket sheet showed only the filing of an affidavit on December 12 and the issuance of the warrant on that date and the

that, as issuing magistrate, he revalidated and reissued the warrant on December 16 as a result of Agent Fleischer's appearing before him and explaining that "they had not received the word from Salas, and I think he said at that time they believe that Salas had called Sanchez and alerted him of any kind of danger that may be involved from agents interfering . . . ." Thus, at this hearing no mention was made of, nor was any consideration given to, Agent Fleischer's affidavit of December 16, 1969.

Preliminary hearing in the case was had the next day, June 23, 1970, in another division of the municipal court. Defense counsel attempted to renew his motion to suppress. (See Pen. Code, § 1538.5, subd. (f).) The judge refused to entertain the motion anew, however, ruling that he was bound by the determination made the preceding day in the hearing before the issuing magistrate. Nevertheless, in anticipation of an application for a pretrial extraordinary writ or eventual appeal, the district attorney was permitted to introduce into evidence the documentary evidence supporting the validity of the search. The People were represented at the preliminary hearing by the deputy district attorney regularly handling the case, and, pursuant to the ruling that he would be permitted to introduce evidence supporting the legality of the search, he called as a witness Agent Fleischer who testified to making and presenting his affidavit of December 16 and the revalidation and reissuance of the warrant based thereon. Defense counsel protested that this was the first he had ever heard of such an affidavit and related the explanation given him the day before by the issuing magistrate as to how the revalidation and reissuance came about. A recess was had to enable the court clerk to search for the affidavit. A preliminary search was unfruitful. Defense counsel was permitted to call the issuing magistrate as a witness. The substance of his testimony was that his statement the preceding day was made from his recollection of the matter; that he had been shown a copy of Agent Fleischer's affidavit of December 16 a few moments before in the hallway; but that it did not refresh his recollection. While the magistrate was testifying, the court clerk found the original of Agent Fleischer's affidavit dated December 16. Thereafter defense counsel completed his examination of the magistrate. Agent Fleischer then resumed the stand, and after further direct examination, was cross-examined by defense counsel. The affidavit, together with a docket sheet pertaining thereto,[11] was admitted into evidence on the issue of probable cause over

---

return of the warrant on December 22, 1969. It contained no reference to the revalidation and reissuance of the warrant nor to Agent Fleischer's affidavit of December 16. (See, however, fn. 11, *post*.)

[11]Whereas the original affidavits, warrant and docket sheet bore the number 0010 (see fn. 10, *ante*), for some reason the affidavit of December 16 and its accompanying docket sheet were assigned the number 0011. The latter docket sheet shows the

defense counsel's objections that the document had been willfully suppressed and was in conflict with the magistrate's testimony.

Defendant's motion to suppress in the superior court (Pen. Code, § 1538.5, subd. (i)) was heard in combination with his motion under Penal Code section 995 on October 20, 1970. No testimony was taken. Both motions were submitted on the basis of the transcripts of the original motion to suppress and the preliminary hearing, including the transcription of the tape-recorded telephone conversation, and all of the documentary evidence relating to the search warrant, including Agent Fleischer's affidavit dated December 16.

It is at once apparent that defendant's contention that the revalidation and reissuance of the warrant were not, in fact, based upon Agent Fleischer's affidavit of December 16 must be rejected. In hearing a renewed motion to suppress under Penal Code, section 1538.5, subd. (i), the superior court determines the facts anew. (Pen. Code, § 1538.5, subd. (i); *People* v. *Harrington*, 2 Cal.3d 991, 995-997 [88 Cal.Rptr. 161, 471 P.2d 961].) Whether the warrant was revalidated and reissued by the magistrate on the basis of Agent Fleischer's affidavit of December 16 was a matter of fact to be determined by the superior court and was impliedly, if not expressly, decided adversely to defendant. The testimony of Agent Fleischer contained in the transcript of the preliminary hearing constitutes substantial evidence to support that determination. The fact that the issuing magistrate had no recollection of the affidavit constituted at most a conflict in the evidence on this point.

Defendant also contends, first, that he was deprived of an opportunity to impeach the veracity of Agent Fleischer's affidavit of December 16, and, second, that the evidence shows that the facts therein stated were untrue. These contentions are unmeritorious for the same reasons as the preceding contention. Happily, we need not address ourselves to the difficult and troublesome question whether an accused is entitled to attack the accuracy of statements contained in an affidavit supporting a search warrant (see *United States* v. *Ramos*, 380 F.2d 717, 720; Mascolo, *Impeaching the Credibility of Affidavits for Search Warrants: Piercing the Presumption of Validity*, 44 Conn. B.J. 9; Note, *Testing the Factual Basis for a Search Warrant*, 67 Colum.L.Rev. 1529), for, in the case at bench, defendant was deprived of no such right. His contention of such deprivation is based upon his ignorance of the existence of Fleischer's affidavit of December 16 until

---

filing of the affidavit on December 16, 1969 and recites the issuance of a warrant. The next entry, dated December 22, 1969, refers to the return of the warrant and indicates that the returned warrant was placed in the file numbered 0010 inasmuch as it had been originally issued under that number and then reissued.

it came to light in the middle of the preliminary hearing. But, as previously noted, upon renewal of the motion to suppress in superior court, defendant was entitled to a de novo hearing at which he had the right to offer any competent evidence. By that time he had full knowledge of the existence of Fleischer's affidavit dated December 16, yet he offered no evidence in the hearing on the renewed motion to suppress germane to the accuracy or truthfulness of Fleischer's averments aside from that included in the transcript of the preliminary hearing.

The assertion that the evidence shows the inaccuracy or untruthfulness of the statements contained in Fleischer's affidavit of December 16 is based on the explanation and, later, the testimony of the issuing magistrate concerning the reissuance to the effect that he thought he had been informed that Salas may have contacted defendant and warned him of the impending search. Defendant points out that this accords with the testimony of Agent Fleischer that, when defendant was arrested, he stated that Salas had telephoned him prior to the search and warned him that the officers were coming with a search warrant. Once again, to the extent an accused is entitled to attack the validity of a search warrant on the basis of the inaccuracy or untruthfulness of statements in a supporting affidavit, a question we are not called upon to decide, the question was one of fact to be determined by the superior court in the de novo hearing on the renewed motion to suppress. At most, the testimony of the magistrate from his recollection of events some six months earlier and the reported statement of defendant, ambiguous as to time, created only a conflict with the affidavit and testimony of Agent Fleischer. By its ruling denying the motion to suppress, the superior court impliedly determined this fact adversely to defendant, and Agent Fleischer's affidavit and testimony constitute substantial evidence to support that determination.

Next, defendant contends that the revalidated and reissued warrant is invalid because no reference is made on the face of the warrant to Agent Fleischer's affidavit of December 16 (see Pen. Code, § 1529) and because that affidavit was not "open to the public as a judicial record" after execution of the warrant (see Pen. Code, § 1534, subd. (a)). (See discussion preceding and following fn. 8, *ante.*) We deal first with the public record argument.

Although Penal Code, section 1534, subdivision (a) provides that after a search warrant has been executed, "the documents and records shall be open to the public as a judicial record," it is by no means certain that, absent a willful suppression of evidence or resulting prejudice, the failure timely to make these documents a judicial record has the effect of invalidating an otherwise validly issued warrant. So far as we are informed, there

is no California authority on the point. Rule 41 (f) of the Federal Rules of Criminal Procedure, however, requires the judge or commissioner who has issued a search warrant to file the warrant, the return, the inventory and all other papers connected therewith with the clerk of the district court. The purpose of this provision in the federal rules would appear to be similar to that of Penal Code, section 1534, subdivision (a). Yet, absent a showing of willful suppression or prejudice, failure to file or delay in filing is held not to invalidate the warrant under the federal rule. (See *United States* v. *Gross,* 137 F.Supp. 244, 248 and cases cited; *United States* v. *Averell,* 296 F.Supp. 1004, 1014 and authorities cited.)

Even were we to conclude, however, that the more precise language of the California statute compels the contrary rule, the facts of the case at bench do not establish defendant's contention that Agent Fleischer's affidavit of December 16 was not made a judicial record. Ultimately, the original affidavit was found by the court clerk in the court records. The court's docket sheet attached to the affidavit when it was admitted into evidence indicates that it was lodged in the court records on December 16, 1969. It was, therefore, a judicial record. The fact that the clerk had difficulty in locating the affidavit would indicate only that it had been misplaced or misfiled.[12]

Neither does the evidence establish willful suppression. It shows only that the issuing magistrate did not recall the affidavit, that the clerk had difficulty in locating it in the files but that eventually it was found. Defense counsel did not take the stand and testify, but even if we accept his representation at the preliminary hearing that he had asked personnel in the clerk's office about the existence of such an affidavit and been informed that no such affidavit existed, we must likewise accept the representations of the deputy district attorney at the preliminary hearing that a copy of the affidavit was, at all times, lodged in his file and that all matters in his file had been made available to defense counsel.

Furthermore, as previously pointed out, no prejudice to defendant resulted. The affidavit was found during the preliminary hearing on June 23,

---

[12]What occurred is deducible from the several docket sheets. (See fns. 10 and 11, *ante.*) The affidavit of December 16 was erroneously assigned a new number (0011) and entered on a new docket sheet. While docket sheet numbered 0011 made reference to file 0010, docket sheet 0010 made no reference to file 0011. When the warrant was returned it was placed in file 0010 which then appeared to be complete in and of itself. The confusion no doubt resulted from the unusual procedure of revalidation and reissuance and may have been contributed to by the fact that the court was, from statements made by both municipal court judges, in the process of moving from one location to another. The latter was also the reason given by the issuing magistrate for ordering the confidential informant's affidavit and the tape to be stored in an evidence locker at the jail.

1970. It was not until October 20, 1970, some four months later, that the hearing was had on defendant's renewed motion to suppress in superior court, at which time he was entitled to a de novo hearing. At the preliminary hearing defense counsel stated his intention of questioning the municipal court clerk as to the facts and circumstances surrounding the filing and discovery of the missing affidavit. Between June and October he had ample time in which to do so, and presumably had any fact favorable to defendant existed, it would have been presented at the renewed suppression hearing.

Whether or not Fleischer's affidavit of December 16 was made a judicial record, whether or not it was willfully suppressed and whether or not defendant was prejudiced by delayed discovery of the document were, in the first instance, questions of fact to be determined by the superior court at the suppression hearing. Impliedly, the superior court determined these questions adversely to defendant, and, as set forth above, these determinations find ample support in the record.

Next, we turn to the effect of the omission on the face of the reissued warrant of any reference to the affidavit of Agent Fleischer dated December 16. Defendant's contention is based on Penal Code, section 1529 which prescribes the form for search warrants, the pertinent portion of which is set forth in the margin.[13] We first note that one jurisdiction whose statute is in precisely the same language holds the statute to be directory rather than madatory and the omission of the name of the affiant a mere irregularity and not a fundamental defect sufficient to invalidate an otherwise validly issued warrant. (*Morrison* v. *State* (1949) 88 Okla.Crim. 445 [204 P.2d 544, 545-546].) Rule 41(c) of the Federal Rules of Criminal Procedure provides in pertinent part: "[A warrant] shall state the grounds or probable cause for its issuance and the names of the persons whose affidavits have been taken in support thereof." The effect of failure to comply with the federal rule appears to be unsettled. (See *King* v. *United States,* 282 F.2d 398; but cf. *United States* v. *Averell, supra,* 296 F.Supp. 1004; *Calo* v. *United States,* 338 F.2d 793.) The purpose of the federal rule has been said to be to apprise the accused of the identity of the person who must take responsibility for the facts alleged so that he may be better able to challenge the legality of the warrant. (*King* v. *United States, supra,* 282 F.2d at p. 400.)

---

[13]"The warrant must be in substantially the following form:
County of _____.

The people of the State of California to any sheriff, constable, marshall or policeman in the County of _____:

Proof, by affidavit, having been this day made before me by (*naming every person whose affidavit has been taken*) . . . ." (Italics supplied.)

In view of the fact that the California requirement for setting forth the name of every affiant is contained in a statute merely prescribing the form for search warrants which itself expressly states that the warrant need only be "substantially" in the form prescribed, we should be inclined to hold, were we required to decide the question, that even the complete failure to mention the name of the person whose affidavit supports the search warrant would not invalidate the warrant absent a showing of intentional concealment or prejudice to the party challenging the warrant's validity. (*United States* v. *Averell, supra,* 296 F.Supp. at p. 1015; *Morrison* v. *State, supra,* 204 P.2d at pp. 545-546.) As we view them, however, the facts of the instant case do not require that holding. The warrant as originally issued recited: "Proof by affidavit, having been made this day before me by DANIEL P. FLEISCHER that there is probable and reasonable cause . . . ." Thus, the original warrant named every person whose affidavit was taken other than the confidential informant. (See fn. 8, *ante.*) The endorsement by which the warrant was revalidated and reissued was made on the face of the original warrant. It recites: "Given under my hand this 16th day of December, 1969." Going back to the original recital: "Proof, by affidavit, having been made *this day* before me by DANIEL P. FLEISCHER [italics supplied] . . .," the revalidated and reissued warrant is reasonably interpretable as referring to Agent Fleischer's affidavit of December 16, which date was the date of the reissued warrant. In any event, Penal Code, section 1529 does not direct that the date of each affidavit be shown on the face of the warrant. It requires only that the name of the affiant be set forth. It was. Even if we assume the purpose of the California statute is the same as that of the mandate in rule 41(c) of the Federal Rules of Criminal Procedure to apprise interested parties of the person who must take responsibility for the facts alleged so as to enhance their ability to challenge the validity of the warrant, that purpose was satisfied by the reissued warrant on the face of which Fleischer was named.

As previously noted, the record does not establish any intentional concealment aside from concealment of the identity of the confidential informant prior to compelled disclosure, nor, in view of his right to de novo hearing on the motion to suppress in superior court, was defendant prejudiced by the failure of the reissued and revalidated warrant to mention expressly the affidavit of Agent Fleischer dated December 16, 1969.[14]

---

[14]If a revalidation and reissuance procedure is to be employed, the better practice would be for the endorsement by the magistrate to set forth anew the name of any person whose affidavit has been taken in connection with the revalidation and reissuance. (Pen. Code, § 1529.)

### *Motion to Set Aside Information*

 Defendant's final contention with respect to validity of the search warrant is that neither the issuing magistrate at the hearing of the motion to suppress nor the judge at the preliminary hearing actually considered or determined the sufficiency of Fleischer's affidavit of December 16. As previously noted, in this he is correct. At the motion to suppress before the issuing magistrate, the affidavit of December 16 did not come to light, was not introduced into evidence and was not considered. At the preliminary hearing, although the affidavit was received into evidence, the judge refused to rule on its sufficiency, feeling he was bound by the ruling of the issuing magistrate on the motion to suppress the preceding day. Manifestly, however, the affidavit of December 16 taken together with the information supplied the magistrate on December 12 was amply sufficient to justify renewed issuance of the warrant. Insofar as validity of the warrant and the ultimate ruling in superior court on defendant's motion to suppress is concerned, therefore, it is apparent that any errors or irregularities in connection with the motions to suppess in municipal court were cured by the correct determination of the superior court at the de novo hearing under Penal Code, section 1538.5, subdivision (i). Although not addressed by the parties as such, the issue raised by defendant's contention is whether his motion to set aside the information presented to the superior court simultaneously with his renewed motion to suppress should have been granted because of errors or irregularities in the preliminary proceedings.

 Although we have been referred to no case deciding the question, we think, as a general proposition, the view of the judge at the preliminary hearing that he was bound by the determination made by the issuing magistrate on the motion to suppress was correct. That is, as we read Penal Code, section 1538.5, as a general proposition, a defendant is entitled to one and only one suppression hearing in the municipal court, either before the issuing magistrate (Pen. Code, § 1538.5, subd. (b)) or at the preliminary hearing (Pen. Code, § 1538.5, subd. (f)). Usually, he is not entitled to first present his motion to the issuing magistrate and then renew his motion at the preliminary hearing. The case at bench, however, presented an exceptional situation. Through no fault of defendant, the validity and sufficiency of Fleischer's December 16 affidavit was not considered or determined at the hearing before the issuing magistrate. Under these circumstances, defendant should have been permitted to renew his motion to suppress at the preliminary hearing for the purpose of obtaining such determination.

Moreover, implicit in defendant's contention is that, on the basis of the evidence before the issuing magistrate, which did not include Fleischer's December 16 affidavit, the motion to suppress should have been granted. We agree. In the absence of Fleischer's affidavit of December 16 there was no evidence of any cause whatever for the revalidation and the reissuance of the warrant. If the explanation of the magistrate given at that hearing were treated as evidence, it would be insufficient basis for the revalidation and reissuance of the warrant, for his recollection was that the expected shipment had not arrived and that Salás had warned defendant of the impending search. Were these the facts, it would not be reasonable to entertain a strong suspicion that defendant would still have the contraband at his residence.

Thus, we must confront the question whether, notwithstanding that we have concluded the superior court correctly determined the motion to suppress under Penal Code, section 1538.5, subdivision (i) and notwithstanding that defendant submitted his case for decision on the merits on the basis of the transcript of the preliminary hearing under circumstances which he himself characterizes as tantamount to a guilty plea, we must nevertheless reverse the judgment because of an erroneous ruling of the issuing magistrate on the original motion to suppress or the erroneous failure of the judge at the preliminary hearing to redetermine the validity of the search warrant on the basis of the new evidence before him.[15]

---

[15]The mere statement of the question indicates the crying need for legislative reform to eliminate the overlapping procedures available to a defendant in a criminal case for pretrial challenge of a search and seizure. Obviously, the enactment and subsequent amendment of Penal Code, section 1538.5 have not sufficiently dealt with the problems exposed in *People* v. *Gershenhorn,* 225 Cal.App.2d 122, 124 [37 Cal. Rptr. 176]. In fact, to some extent the problems have been aggravated by the disparate function of the superior court in hearing motions under Penal Code, sections 995 and 1538.5, subdivision (i). (See *People* v. *Superior Court,* 276 Cal.App.2d 581, 584-585 [81 Cal.Rptr. 42].) In passing on a motion under Penal Code, section 995, the superior court acts as a reviewing court and must uphold the determination of the magistrate at the preliminary hearing if there is any substantial evidence to support his determination. (See *People* v. *Maltz,* 14 Cal.App.3d 381, 389 [92 Cal. Rptr. 216] and cases cited.) In passing on a renewed motion to suppress under Penal Code, section 1538.5, subdivision (i) the defendant is entitled to a de novo hearing and the superior court determines the facts anew. (Pen. Code, § 1538.5, subd. (i); *People* v. *Harrington, supra,* 2 Cal..3d at pp. 995-997.) The problem is further complicated by the scope of appellate review. In reviewing on appeal the denial of a motion under Penal Code, section 995, it is the determination of the magistrate at the preliminary hearing that is reviewed. (*People* v. *Maltz, supra,* 14 Cal.App.3d at pp. 389-390 and cases cited.) In reviewing on appeal the denial of a renewed motion to suppress pursuant to Penal Code, section 1538.5, subdivision (i) it is the de novo determination of the superior court that is reviewed. Since under existing law a defendant may in an appropriate case challenge a search and seizure under both

We observe at once that, having determined that the search warrant was valid, were we to reverse for errors and irregularities occurring in the original motion to suppress or the preliminary hearing we would be in the absurd posture of reversing for new proceedings to determine a question upon which our present decision would constitute the law of the case. (*People* v. *Durbin,* 64 Cal.2d 474, 477 [50 Cal.Rptr. 657, 413 P.2d 433]; *People* v. *Harvey,* 156 Cal.App.2d 516, 518-522 [319 P.2d 689].)

■ Penal Code, section 995 provides that, upon motion, the information *must* be set aside if (1) the defendant has not been legally committed by the magistrate or (2) the defendant has been committed without reasonable or probable cause. Where the defendant has not been legally committed and where his motion to set aside the information on that ground has been erroneously denied, an ensuing conviction must be reversed notwithstanding an intervening trial on the merits. (*People* v. *Elliot,* 54 Cal.2d 498, 503 [6 Cal.Rptr. 753, 354 P.2d 225].) "The theory . . . is that where the accused is not legally committed within the meaning of section 995 of the Penal Code, the commitment is voidable. Upon proper objection, the superior court has no jurisdiction to proceed." (*People* v. *Elliot, supra.*) The same rule has been applied to the ground of commitment without reasonable or probable cause. (E.g., *People* v. *Minkowski,* 204 Cal.App.2d 832, 841 [23 Cal.Rptr. 92].) The rule is a recognition of the constitutional mandate (Cal. Const., art. I, § 8) that criminal offenses be prosecuted either by indictment or "by information, after examination and commitment by a magistrate . . . " and the implementing statutory provisions relating to preliminary examinations and holding a defendant to answer as prescribed by part II, title 3, chapter 7 of the Penal Code. (See *People* v. *Elliot, supra,* 54 Cal.2d at pp. 502-503; *Jennings* v. *Superior Court,* 66 Cal.2d 867, 874-875 [59 Cal.Rptr. 440, 428 P.2d 304]; see also *Jones* v. *Superior Court,* 4 Cal.3d 660, 664, 667-668 [94 Cal.Rptr. 289, 483 P.2d 1241].) Thus, where the defendant has been denied a substantial procedural right to which he is entitled under the commitment procedure set forth in title 3, chapter 7 of the Penal Code, he has not been legally committed. (*People* v. *Elliot, supra,* 54 Cal.2d at pp. 502-503; *Jennings* v. *Superior Court, supra,* 66 Cal.2d at pp. 874-875.)

The right to appellate review of defects in the commitment proceedings notwithstanding an intervening trial on the merits is not unlimited, however. If the defendant fails to move to set aside the information, even

sections 995 and 1538.5, subdivision (i), the disparate function of the superior court in hearing those motions and the disparate function of the appellate court in reviewing those determinations must inevitably produce irreconcilable conflict.

fundamental defects of constitutional magnitude are waived. (Pen. Code, § 996; *People* v. *Harris*, 67 Cal.2d 866, 870-871 [64 Cal.Rptr. 313, 434 P.2d 609].) A defendant who does make a motion pursuant to Penal Code, section 995 but who fails to specify or argue the defect complained of on appeal is precluded from urging the alleged error as grounds for reversal. (*People* v. *Bartlett*, 256 Cal.App.2d 787, 792 [64 Cal.Rptr. 503]; *People* v. *Reimringer*, 116 Cal.App.2d 332, 336-337 [253 P.2d 756].) Moreover, a defendent who has admitted the sufficiency of the evidence by pleading guilty or *nolo contendere* is not entitled to appellate review of the order denying his motion under Penal Code, section 995 on the ground that he was committed without reasonable or probable cause. (*People* v. *Warburton*, 7 Cal.App.3d 815, 821-822 [86 Cal.Rptr. 894] [petition for hg. den. July 16, 1970].) The question whether on appeal from a judgment resulting from a guilty plea a defendant may seek review of the order denying his motion to set aside the information on the ground that he was not legally committed has apparently not yet been answered.

The record contains no written motion by defendant to set aside information, and we are unable to determine the precise grounds for his motion. The reporter's transcript of the hearing on the Penal Code, sections 995 and 1538.5 motions, however, discloses that defendant urged only the invalidity of the search warrant and ensuing search and insufficiency of the evidence to establish probable cause even if the search was lawful.

Applying the foregoing principles to the facts in the case at bench we have concluded that reversal is not required because of the erroneous ruling of the issuing magistrate on the motion to suppress or the failure of the judge at the preliminary hearing to consider anew the motion to suppress. Defendant made no argument with respect to the latter in the hearing on his 995 motion, and that error may not be raised for the first time on appeal. (*People* v. *Bartlett, supra,* 256 Cal.App.2d at p. 792; *People* v. *Reimringer, supra,* 116 Cal.App.2d at pp. 336-337.) The former, the motion to suppress before the issuing magistrate (Pen. Code, § 1538.5, subd. (b)), is not one of the fundamental rights prescribed in part II, title 3, section 7 of the Penal Code concerning preliminary examination and commitment, and the erroneous ruling was not, therefore, of the sort contemplated in *People* v. *Elliot, supra,* 54 Cal.2d 498 or *Jennings* v. *Superior Court, supra,* 66 Cal. 2d 867.)

Moreover, in the context of a motion made pursuant to section 995 of the Penal Code, both the contention that the search warrant and ensuing

search were invalid and the contention that, in any event, the evidence was insufficient, are addressed to the sufficiency of the evidence to establish probable cause.[16] ▮ As in *People* v. *Warburton, supra,* 7 Cal.App.3d 815, 821-822, defendant is precluded from contesting the sufficiency of the evidence to support his commitment. We recognize that in *Warburton* the factor precluding consideration of the issue on appeal was the defendant's plea of *nolo contendere,* whereas in the case at bench, the case was submitted for decision on the basis of the preliminary transcript. We also fully recognize that there are many submissions on the transcript in which the real issue is the sufficiency of the evidence, which submissions would not preclude review on appeal of the order denying a motion to set aside the information on that basis. (See *People* v. *Cook,* 19 Cal.App.3d 405, 409, fn. 3 [96 Cal.Rptr. 860].) In the case at bench, however, the submission on the transcript was made on the express understanding that defendant be found guilty; the court informed defendant that he would be found guilty; the submission on the transcript was part of a negotiated disposition in which defendant desired only to reserve the right to seek appellate review of the legality of the search warrant and ensuing search; and defendant himself has characterized his submission on the transcript as tantamount to a guilty plea and made contentions for reversal based on that fact. He cannot have it both ways. The submission was tantamount to a guilty plea. "[A] plea of guilty is an admission of every element of the offense, so that no other proof is necessary." (*People* v. *Warburton, supra,* 7 Cal.App.3d at p. 821; see *People* v. *Ward,* 66 Cal.2d 571, 574-575 [58 Cal.Rptr. 313, 426 P.2d 881]; *People* v. *Jones,* 52 Cal.2d 636, 651 [343 P.2d 577].) We can conceive of no reason why a defendant should be permitted, as a part of a negotiated disposition, to make a submission on the transcript tantamount to a guilty plea and thereafter seek appellate review of whether the evidence before the magistrate indicated probable cause to hold him to answer. (Cf. *People* v. *Warburton, supra,* 7 Cal.App.3d at p. 822.)

### Sufficiency of the Evidence

For the reasons just stated, defendant is also precluded from contesting on appeal the sufficiency of the evidence to support his conviction. (*People* v. *Cook, supra,* 19 Cal.App.3d 405, 408-410; cf. *People* v. *Warburton,*

---

[16]The only justification for permitting the search and seizure issue to be raised in connection with the motion under Penal Code, section 995 is that, if the search was unlawful, the evidence seized is inadmissible, and that, as a result, there was insufficient competent evidence to establish probable cause.

*supra,* 7 Cal.App.3d at p. 821; *People* v. *Brown,* 18 Cal.App.3d 1052, 1055 [96 Cal.Rptr. 476].)[17]

Judgment affirmed.

Kerrigan, Acting P. J., and Gabbert, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied May 31, 1972. Peters, J., was of the opinion that the petition should be granted.

---

[17]The insufficiency of the evidence contention is based on defendant's assertion that the evidence of his connection with the house in which the approximately 7 grams of marijuana involved in this case were seized is so tenuous that no reasonable inference of his possession of the contraband can be drawn therefrom. The only person in the apartment at the time the contraband was found was the female codefendant. While the search was being made, defendant was arrested across the street, either getting into or getting out of an automobile. Nevertheless, the evidence sufficiently shows defendant's connection with the house to support a reasonable inference of his possession of the contraband. The female codefendant obviously resided at the house, and, although defendant has tried mightily to disassociate himself from her, the record shows that she used the name Sanchez. (See fn. 1, *ante.*) A man's clothing was found in the house as well as clothing of the female codefendant, and defendant had been observed by Agent Fleischer at the house approximately four hours prior to execution of the warrant. When he was arrested, defendant was advised of his constitutional rights and agreed to talk to Agent Fleischer. Amongst other things, he told Agent Fleischer that, "he smoked marijuana, and that marijuana could be found at any time in his house." This statement was reasonably interpretable as referring to the house in which the marijuana had been found, particularly in view of the fact that defendant, Agent Fleischer and the female codefendant were standing in the living room of the house when the statement was made.

More to the point, perhaps, in the course of the search the officers discovered in the apartment a rent receipt made out to "Ray & Joan Sanchez" in the amount of $295 representing the first and last month's rent plus a $25 deposit on a one-year lease of the house. The prosecution attempted to introduce this rent receipt into evidence at the preliminary hearing but it was excluded on the objection of defendant and the female codefendant that it constituted hearsay. In all probability the rent receipt was admissible as an adoptive admission, but, in any event, the real point is that had defendant not entered into the submission on the transcript tantamount to a guilty plea as part of a negotiated disposition, the prosecution undoubtedly could and would have produced the person who signed the rent receipt and qualified it for admission into evidence as a business record. Presumably the lessor could also identify defendant as the Ray Sanchez to whom he had leased the house. A defendant may not in effect plead guilty as part of a negotiated disposition and then complain on appeal of the prosecution's failure to present its evidence.